### No. 10,224.

### KNOPF v. THE STATE.

CRIMINAL LAW.—*Pleading.*—*Separate Offences.*—*Duplicity.*—*Indictment or Information.*—In criminal pleading, there can be no joinder of separate and distinct offences in one and the same count. Where an information or indictment charges the defendant, in a single count, with two or more substantive offences, it is bad for duplicity, and a motion to quash the same, if made at the proper time, ought to be sustained.

From the Wayne Circuit Court.

*C. H. Burchenal,* for appellant.

*D. P. Baldwin,* Attorney General, and *C. E. Shiveley,* for the State.

HOWK, J.—This was a prosecution by affidavit and information, against the appellant and one Thomas Maher, for erecting and maintaining a public nuisance. Upon a waiver of arraignment and a plea of not guilty, the appellant was sepa-

rately tried by a jury, and a verdict was returned finding him guilty, and assessing his fine at $10. His motion for a new trial having been overruled, and his exception saved, the court rendered judgment on the verdict.

The following decisions of the circuit court are assigned as errors, by the appellant:

1. In overruling his motion to quash the affidavit and information; and,

2. In overruling his motion for a new trial.

In the affidavit and information it was charged, in substance, that the appellant and one Thomas Maher, on the 17th day of May, 1881, at Wayne county, near divers public highways then and there situate, and also near the dwelling-houses of divers inhabitants of this State, did unlawfully and injuriously make, erect and set up a public nuisance, to wit, a slaughter-house, for the purpose of slaughtering and butchering cattle, hogs, sheep and other animals, and did place and sink therein a certain boiler and furnace, for the purpose of boiling, rendering and tanking the entrails and offal of beasts therein, and did then and there, and on divers other days and times, between that day and the making of said affidavit, unlawfully and injuriously make and continue, and yet continues, said public nuisance, by then and there unlawfully and injuriously killing and slaughtering cattle, hogs, sheep and other animals, and permitting the blood and offal thereof to accumulate and be in and about the building so occupied by them, for the purpose aforesaid, and to become putrid, decayed, noisome and offensive to the senses, and did suffer, permit, cause and direct the said blood, entrails and offal of animals so killed and slaughtered by them as aforesaid, at the times and places aforesaid, to be thrown from the building so occupied by them for the purpose aforesaid, into a stream of water called Whitewater, which ran near to and on a line adjoining the place so occupied by them, in said county and State, and then suffer the same to become putrid, decayed, noisome and offensive, and thus did pollute and poison the water of said stream, which

flowed thereafter, and after being thus poisoned and polluted, through neighborhoods in said county and State, in which and near which stream divers inhabitants of this State did then and there reside; that they, at said times and places, unlawfully and injuriously did render and tank divers large quantities of said entrails and offal, by reason whereof divers noisome, offensive, unwholesome smokes, smells and stenches, during said times, were thence emitted and issued, by which the air then and there and still was greatly impregnated with the said smokes, smells and stenches, and by reason of which, as well as by the stenches and smells arising from the putrid, decayed and offensive blood and offal suffered to accumulate in and about said premises, the air was corrupted and rendered offensive, uncomfortable, unwholesome and injurious to the health, offensive to the senses, and was such an obstruction to the further use of the property of said inhabitants as essentially to interfere with the comfortable enjoyment thereof, as well as the life itself of said inhabitants, to the great damage and common nuisance of all inhabitants of said State, there inhabiting, being and residing, and going, returning and passing through the streets and along the said highways, contrary to the form of the statute, etc.

This prosecution was commenced on the 1st day of December, 1881. The unlawful and injurious acts, charged to have been committed or suffered by the appellant and his codefendant in the affidavit and information, began on the 17th day of May, 1881, and continued thereafter until the day of the commencement of this prosecution. The information contained only one count, in which, and in the affidavit upon which it was founded, the appellant was charged with at least two separate and distinct offences, namely: 1st. The erection and maintenance of a public nuisance; and, 2d. The pollution and vitiation of the water of a running stream. Prior to the 19th day of September, 1881, the first of these two offences was defined and its punishment prescribed in sections 8 and 9 of the misdemeanor act of June 14th, 1852.

In section 8 it was provided that every person who should erect, or continue and maintain, any public nuisance, to the injury of any part of the citizens of this State, should be fined not exceeding $100; and in section 9 it was further provided that after any person had been convicted of erecting or maintaining any public nuisance, the court might make it a part of the judgment that such nuisance should be removed by the proper officer. 2 R. S. 1876, pp. 460 and 461. The second offence above named was made such by the act of March 3d, 1859, to prevent the throwing or depositing of any carrion or dead animal into any running stream, or lake of water, in this State, etc. In this act, it was provided that any person who should throw or deposit any dead animal or carrion in any running stream of water, or any lake, within this State, so that the water might become vitiated thereby, should be guilty of a misdemeanor, and, upon conviction thereof, should be fined in any sum not less than five dollars nor more than twenty dollars. 2 R. S. 1876, p. 486.

On the 19th day of September, 1881, the act of April 14th, 1881, concerning public offences and their punishment, took effect and became, and has since continued to be, the law of this State defining, among others, the offences charged in the affidavit and information in this case, and prescribing the punishment therefor. Section 157 of this act, being section 2066, R. S. 1881, reads as follows:

" Whoever erects, continues, uses, or maintains any building, structure, or place for the exercise of any trade, employment, or business, or for the keeping or feeding of any animal, which, by occasioning noxious exhalations or noisome or offensive smells, becomes injurious to the health, comfort, or property of individuals or the public; or causes or suffers any offal, filth, or noisome substance to be collected or to remain in any place, to the damage or prejudice of others or the public; or obstructs or impedes, without legal authority, the passage of any navigable river, harbor, or collection of waters; or unlawfully diverts any stream of water from its natural

course or state, to the injury of others; or obstructs or encumbers, by fences, buildings, structures, or otherwise, any public grounds; or erects, continues, or maintains any obstruction to the full use of property, so as to injure the property of another or essentially to interfere with the comfortable enjoyment of life,—shall be fined not more than $500 nor less than $10: *Provided,* That nothing in this section shall prevent the board of trustees of towns and the common councils of cities, from enacting and enforcing such ordinances within their respective corporate limits as they may deem necessary to protect the public health and comfort."

It will be observed that in this section of the statute not less than six separate and distinct offences are defined, each of which is punishable by fine within precisely the same limits. It will be also observed, that the appellant is charged, by the facts stated in the affidavit and information in this case, with the commission of at least two of the six separate and distinct offences; and that, although each of these two offences is punishable, under the section quoted, by fine within precisely the same limitations, yet the punishments therefor were, as we have seen, widely different under the laws in force prior to September 19th, 1881. Not only is this so, but the facts stated in the affidavit and information constitute still another and different public offence, under the provisions of section 159 of the aforesaid act of April 14th, 1881, being section 2068, R. S. 1881, which is punishable also by fine, but under entirely different limitations from those prescribed in any of the sections heretofore referred to. In section 2068, it is provided as follows:

"Whoever puts the carcass of any dead animal, or the offal from any slaughter-house or butcher's establishment, packing-house or fish-house, or any spoiled meats or spoiled fish, or any putrid animal substance, or the contents of any privy vault, upon or into any river, pond, canal, lake, public ground, market-place, common, field, meadow, lot, road, street, or alley; and whoever, being the owner or occupant of any such

place, knowingly permits any such thing to remain therein to the annoyance and injury of any of the citizens of this State, or neglects or refuses to remove or abate the nuisance occasioned thereby, within twenty-four hours after knowledge of the existence of such nuisance upon any of the above described premises owned or occupied by him, or after notice thereof, in writing, from any health officer of the city or the trustee of the township in which such nuisance exists,—shall be fined not more than $100 nor less than $1."

By the facts stated in the affidavit and information in this case, it is manifest that the appellant and his co-defendant were and are charged with separate and distinct offences, made such by different statutes, and for which entirely different punishments have been and are prescribed. Upon these grounds, it is earnestly insisted by appellant's counsel that the affidavit and information are alike bad for duplicity, and that the motion to quash the same ought to have been sustained. On the other hand, the State's counsel claim that this court is fully committed, by its previous decisions, to the doctrine that mere duplicity affords no sufficient ground for quashing an indictment or information. If the counsel for the State are right in the claim they assert, it would probably settle the question; for the rule of *stare decisis* might well require us, even on a question of pleading or procedure, to adhere to our former decisions. But the appellant's counsel insists that this claim of the attorneys for the State is not sustained by the decisions of this court; and that, although expressions are to be found in the opinions, in several cases, to the effect that duplicity is not a sufficient ground for quashing an indictment or information, yet these expressions were not necessary to the decision of any of the cases, and might well be regarded, therefore, as mere *dicta*. An examination of the cases in this court has led us to the conclusion that the views of the appellant's counsel upon the point under consideration are substantially correct.

In *State* v. *Shields*, 8 Blackf. 151, it was held that a single count, charging three distinct offences, was bad for duplicity.

In *Hayworth* v. *State*, 14 Ind. 590, it was said: "We are not sure that duplicity would be a ground of quashal, under the code; * though it was at common law, certainly, in felonies. But in this case there was no duplicity."

In *Simons* v. *State*, 25 Ind. 331, the court said: "We understand the indictment as clearly charging both a giving and selling. It is very true that this was bad pleading, and if a motion to quash had been made it must probably have been sustained."

In *Shafer* v. *State*, 26 Ind. 191, the indictment charged that the defendant "did sell and give away certain intoxicating liquor, at and for the sum of ten cents," to a minor. Of this charge the court said that, "In a strict sense, the giving charged is repugnant, for there can be no such thing as a giving for a price." It seems to us that the indictment charged a sale, and nothing more, and that the words "giving away" in the indictment should have been regarded as mere surplusage, "signifying nothing." Thus regarded, there was no duplicity in the indictment, for it contained the single charge of an unlawful sale. It charged the giving away for a price, but there could be no such thing, and therefore that charge amounted to nothing. The court, however, construed the indictment to be double, and then decided that such duplicity was not sufficient ground for quashing the indictment.

In *Eagan* v. *State*, 53 Ind. 162, the information charged that the defendant did "sell, barter and give away intoxicating liquor to," etc. On the motion to quash, it was urged that the information was bad for duplicity, "because it charges a selling, a bartering and a giving." Upon this point the court said: "It does not charge a selling, because it does not allege what, if anything, was paid for the liquor; nor a bartering, because it does not allege what, if anything, was exchanged for it. These words may be held as surplusage, and still leave the charge of giving well alleged."

In *Deveny* v. *State*, 47 Ind. 208, the prosecution originated before a justice of the peace, and was founded upon an affidavit only. It was insisted that the affidavit charged two offences, a sale and gift of the liquor, and that, for that reason, it ought to have been quashed. The court said: "There is no such thing as different counts in an affidavit. If the two offences could be included in one indictment of two counts, we perceive no reason why they may not be in one affidavit and prosecution before a justice of the peace, and tried together."

In *State* v. *Wickey*, 54 Ind. 438, the indictment had been quashed below, on the ground of duplicity and uncertainty. On appeal this court said: "But the indictment in this case is not double. It charges but one offence, and, in addition, contains a quantity of surplusage." The opinion in the case, however, contains this *dictum :* "Duplicity is not ground for quashing an indictment for a misdemeanor."

So, in *State* v. *Cummins*, 78 Ind. 251, the prosecution originated before a justice of the peace upon affidavit only, and, the point having been made that the affidavit was double, this court said: "The allegations of the affidavit tending to make out a charge against the appellee of another offence, under that act, were mere surplusage and did not affect the validity of the affidavit." This disposed of the point, but, upon the authority of *State* v. *Wickey, supra,* the same *dictum* is repeated, namely: "Duplicity does not afford cause for quashing an affidavit or indictment."

Again, in *Lohman* v. *State*, 81 Ind. 15, a prosecution for advertising a gift enterprise, the point was made that the information charged two separate and distinct offences in a single count, and that "the weight of authority" required this court to hold, notwithstanding what had been said in some of its previous decisions, "that duplicity affords good cause for quashing an information." Upon this point, after criticising the framing of the information and declaring that it contained "some surplusage," the court said: "As thus construed, the information did not charge two separate and distinct offences,

but only gave what purported to be a circuitous and somewhat detailed account of one transaction."

We have now noticed in detail each and all of the cases in the reports of the decisions of this court to which our attention has been directed, in which the question under consideration has been suggested or mooted. It will be seen therefrom, we think, that this court is not concluded by the point in judgment, in any of its previous decisions, from holding and deciding, as we now do, that actual duplicity is a sufficient ground for quashing any indictment or information, of a single count, wherein two or more separate and distinct offences are charged. The only case in this court which has come to our notice in which it might be said that a different doctrine is declared, except as mere *dictum*, is that of *Shafer* v. *State*, *supra*, and in that case, as we construe the indictment, it charged simply a sale of intoxicating liquor to a minor, and nothing more. The giving of the liquor for a price was either a sale of the liquor or it was nothing.

In criminal pleading there can be no joinder of separate and distinct offences in one and the same count. In *State* v. *Smith*, 61 Me. 386, the rule and the reason for it are thus stated: "No rule of criminal pleading is better established than that which prohibits the joinder of two or more substantive offences in the same count. A substantive offence is one which is complete of itself, and is not dependent upon another. When several acts relate to the same transaction, and together constitute but one offence, they may be charged in the same count, but not otherwise. Each count in an indictment must stand or fall by itself. The jury can not find a verdict of guilty as to one part, and not guilty as to another part of the same count. This strictness of pleading is necessary in order that the accused may not be in doubt as to the specific charge against which he is called to defend, and that the court may know what sentence to pronounce. When two or more independent offences are joined in the same count, it will be bad for duplicity. *State* v. *Burgess*, 40 Maine, 592–594; *State* v.

*Palmer,* 35 Maine, 9." See, also, *Reed* v. *People,* 1 Parker C. C. 481; *People* v. *Wright,* 9 Wend. 193; *Miller* v. *State,* 5 How (Miss.) 250; *Commonwealth* v. *Symonds,* 2 Mass. 163.

For the reasons given, we are of the opinion that the court erred in the case at bar in overruling the appellant's motion to quash the affidavit and information.

Under the alleged error of the court in overruling the motion for a new trial, the only questions discussed by the appellant's counsel are such as relate to certain supposed errors of law occurring at the trial and excepted to. Our conclusion in regard to the insufficiency of the information renders it unnecessary for us now to consider or decide any of those questions.

The judgment is reversed, and the cause is remanded, with instructions to sustain the motion to quash the affidavit and information.