**Brandon VEST, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0912–CR–1276.

Court of Appeals of Indiana.

July 21, 2010.

Rehearing Denied Sept. 15, 2010.

Suzy St. John, Marion County Public Defender, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Janine Steck Huffman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Brandon Vest appeals his conviction for Class A misdemeanor resisting law enforcement. Vest was accused of fleeing from three police officers all within a single episode of pursuit and arrest. The State's charging information alleged that Vest knowingly fled from Officers "Geoffrey Barbieri and/or Josh Taylor and/or Joel Anderson." The trial court did not

instruct jurors that, in order to return a guilty verdict, they would have to agree unanimously as to which officer Vest fled. Vest argues the trial court erred by failing to do so.

Indiana courts have long held that resisting law enforcement is an offense against public administration rather than a crime against the person. In a single, continuous episode of resisting arrest by flight, only one offense is committed regardless of the number of officers involved. Accordingly, we conclude that the State prosecuted Vest for only one indivisible instance of resisting law enforcement, and jurors were not required to agree on which particular officer Vest fled. The trial court therefore did not err by declining to issue a specific unanimity instruction. We affirm.

### Facts and Procedural History

Indianapolis Metropolitan Police Officers Geoffrey Barbieri, Joshua Taylor, and Joel Anderson were dispatched to a residence in response to a domestic disturbance. Officer Barbieri arrived first and parked his cruiser outside the house. He looked through the residence's kitchen window and saw Vest and two women in the living room. The women were seated, and Vest was pacing back and forth. Officer Barbieri remained outside and waited for the other officers to arrive.

At some point Vest exited the house and walked out onto the front porch. He stood for a moment, noticed the police cruiser parked nearby, and then turned and ran back inside. Officer Barbieri heard a loud commotion come from within the residence. He radioed the other officers and told them to hurry up.

Officer Barbieri next heard the sound of a window being opened. He approached one of the residence windows and observed Vest inside a bedroom, trying to remove the window screen. Officer Barbieri turned on his flashlight, identified himself as a police officer, and ordered Vest to stop and get on the ground. Vest did not comply. Officer Barbieri pulled out his taser and again instructed Vest to get down. Vest ran out of the room and into a hallway.

By this time Officers Anderson and Taylor had arrived and entered the residence. Vest saw the officers in the hallway and immediately headed back into the bedroom and toward the window. Officer Taylor yelled for Vest to stop. Officers Taylor and Anderson chased Vest into the room and tackled him on the bed. The officers ultimately cuffed him and took him into custody.

Approximately two minutes elapsed between the time Vest first came out onto the porch and the point at which he was handcuffed.

The State charged Vest with Class A misdemeanor resisting law enforcement. The amended charging information read as follows:

> On or about August 25, 2009, in Marion County, State of Indiana, the following named defendant Brandon Vest, did knowingly flee from Geoffrey Barbieri and/or Josh Taylor and/or Joel Anderson, a law enforcement officer with the Indianapolis Metropolitan Police Department, after said officer had, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself, and ordered the defendant to stop.

Appellant's App. p. 58.

Vest was tried before a jury. The State called Officers Barbieri, Taylor, and Anderson to testify to the foregoing sequence of events. The State argued in closing:

[Officer Barbieri] said, "I'm the police. You need to get on the ground." That was a flight when [Vest] chose not to . . . obey those orders and go the 8 to 10 feet to the doorway. That's a flight. Here's another flight. He went out that doorway; he went into the hallway. Officers there . . . said, "Stop." What did he do, another flight? He went back into the bedroom and only when there was nowhere else to go because Barbieri was at the window, Taylor and Anderson were at the door, did he finally stop. And technically he didn't even stop then.

Tr. p. 69–70. The trial court instructed the jury in pertinent part:

Before you may convict the Defendant, the State must prove each of the following beyond a reasonable doubt:

1. The Defendant

2. did knowingly or intentionally

3. flee from Geoffrey Barbieri and/or Josh Taylor and/or Joel Anderson, law enforcement officers

4. after said officer(s) had, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified themselves

5. and ordered the defendant to stop.

Appellant's App. p. 59. The court also instructed that "[i]n order to return a verdict of guilty or not guilty you must all agree. . . . Do not sign any verdict form for which there is not unanimous agreement. . . ." *Id.* at 71–72.

The jury found Vest guilty of resisting law enforcement. He now appeals.

### Discussion and Decision

Vest contends that "[t]he State charged and argued [ ] flight from multiple officers in the disjunctive, through various courses of his conduct. . . . Without a unanimity instruction, the jury may have returned a guilty verdict that was not unanimous as to which police officer(s), if any, Vest resisted by flight. . . . Consequently, the trial court committed fundamental error by not giving a unanimity instruction." Appellant's Br. p. 4. We understand Vest's argument as challenging both the form of the charging information as well as the trial court's final instructions to the jury.

### I. Waiver

The State first argues that Vest has waived all issues presented on appeal, as he neither objected to the State's amended charging information nor proffered a specific unanimity instruction to the trial court.

Failure to timely challenge an alleged defective charging information ordinarily results in waiver of the issue. *Higgins v. State*, 690 N.E.2d 311, 314 (Ind. Ct.App.1997), *reh'g denied.* Failure to object to a verdict instruction likewise results in procedural default of the error. *Townsend v. State*, 632 N.E.2d 727, 730 (Ind. 1994).

Nonetheless, a claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. *Brown v. State*, 929 N.E.2d 204 (2010). The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Id.* The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process." *Id.*

Vest's contention is that the State charged multiple offenses in a single count, that the trial court failed to issue a proper unanimity instruction, and that jurors may

have disagreed as to which crime, if any, was committed. These claims implicate Vest's elementary rights to understand the conduct being charged and to a unanimous jury verdict. For these reasons we will proceed to the merits of Vest's appeal and review for fundamental error.

## II. Duplicity and Unanimity

One of the well-established rules of criminal pleading is that there can be no joinder of separate and distinct offenses in one and the same count. *Knopf v. State,* 84 Ind. 316, 324 (1882). A single count of a charging pleading may include but a single offense. *Townsend,* 632 N.E.2d at 730. "Duplicity" occurs when one count improperly alleges two or more separate offenses. *State v. Weil,* 89 Ind. 286, 289 (1883); *see also Phillips v. State,* 518 N.E.2d 1129, 1131 (Ind.Ct.App.1988). Duplicity is unacceptable "because it prevents the jury from deciding guilt or innocence on each offense separately and may make it difficult to determine whether the conviction rested on only one of the offenses or both." 5 Wayne R. LaFave et al., *Criminal Procedure* § 19.3(c) (3d ed.2007). Whether a charging instrument is duplicitous generally turns on a proper construction of the criminal statute at issue. *See* 1A Charles Alan Wright & Andrew D. Leipold, *Federal Practice & Procedure* § 142 (4th ed. 2008).

For example, this Court recently found a charging information duplicitous in *Lainhart v. State,* 916 N.E.2d 924 (Ind.Ct.App. 2009). In *Lainhart,* the defendant was charged with a single count of intimidation. *Id* at 930. Indiana's intimidation statute provides that "[a] person who communicates a threat to another person, with the intent ... that the other person be placed in fear of retaliation for a prior lawful act ... commits intimidation, a Class A misdemeanor." Ind.Code § 35–45–2–1(a); *Lainhart,* 916 N.E.2d at 939. The charg-

ing information alleged that the defendant "communicate[d] a threat to another person, to-wit: Ruth Schreier, Jamie Baker and/or Amy Robertson, with the intent that the other person be placed in fear of retaliation for a prior lawful act." *Lainhart,* 916 N.E.2d at 930. Each of the three named victims was allegedly threatened at a distinct period on the night in question. *Id.* at 929, 930. We explained that, by charging and arguing alternative victims, the State improperly joined several alternative instances of intimidation. *Id.* at 942. As a result, the jury may have disagreed as to which victim was intimidated and thus which crime occurred. *Id.* We reversed the case on other grounds, but we noted for purposes of remand that the trial court should have instructed jurors they had to reach a unanimous verdict as to which offense, if any, the defendant committed. *Id.; see also Scuro v. State,* 849 N.E.2d 682, 688–89 (Ind.Ct.App.2006) ("Scuro was charged with only one count of dissemination to D.D. based on an unspecified incident, and given that the State presented evidence of three instances of dissemination to D.D., it is possible that the jury's verdict ... was not unanimous."), *reh'g denied, trans. denied; Castillo v. State,* 734 N.E.2d 299, 303 (Ind.Ct. App.2000) (vacating conviction where State alleged one unspecific act of dealing cocaine but offered evidence of two incidents that conformed to the charging information), *reh'g denied.*

On the other hand, the State may allege alternative means or "theories of culpability" when prosecuting the defendant for a single offense. *See Taylor v. State,* 840 N.E.2d 324, 333 (Ind.2006). No error results where the State "merely present[s] the jury with alternative ways to find the defendant guilty as to *one* element." *Cliver v. State,* 666 N.E.2d 59, 67 (Ind.1996). " '[D]ifferent jurors may be

persuaded by different pieces of evidence, even when they agree upon the bottom line.'" *Id.* (quoting *Schad v. Arizona,* 501 U.S. 624, 631–32, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991)).

■ One case in which a charging information appropriately alleged alternative means is *Davis v. State,* 476 N.E.2d 127 (Ind.Ct.App.1985), *reh'g denied, trans. denied.* In *Davis,* the defendants were charged with neglect of a dependent child. *Id.* at 130. Indiana's neglect statute provided that "[a] person having the care, custody, or control of a dependent who knowingly or intentionally: (1) places the dependent in a situation that may endanger his life or health; (2) abandons or cruelly confines the dependent; (3) deprives the dependent of necessary support; or (4) deprives the dependent of education as required by law; commits neglect of a dependent." Ind.Code Ann. § 35–46–1–4(a) (Burns 1979); *Davis,* 476 N.E.2d at 130 n. 1. The charging information alleged that the defendants, "then having the care, custody or control of an infant male child, a dependent, did knowingly place such dependent in a situation that did endanger his health and/or did abandon said dependent child." *Id.* at 131. This Court held that the charging information was not duplicitous. *Id.* at 132. We explained that the indictment was based upon two acts, either of which constituted neglect of the infant. *Id.* " 'Where the statute denounces several acts as a crime, they may be charged in one indictment or in a single count if they are connected in the conjunctive. An indictment drawn in that manner is not duplicitous, and it suffices to prove any one or more of the charges.' " *Id.* (quoting *Shanholt v. State,* 448 N.E.2d 308, 314 (Ind.Ct.App.1983)). We also found that the use of "and/or" in the charging information effectively charged the defendants with both of the acts alleged. *Id.;*

*see also Strickland v. State,* 217 Ind. 588, 591, 29 N.E.2d 950, 951 (1940) ("[W]here, as here, a criminal statute enumerates several acts disjunctively, and provides the same punishment for doing any one or all of said acts, then two or more of said acts may be charged conjunctively in a single count without objection for duplicity.").

■ Finally, "a count or charge is not duplicitous when it alleges two or more acts committed in a single transaction even if each of the acts constitutes a separate and complete offense by itself." 16A William Andrew Kerr, *Indiana Practice: Criminal Procedure* § 15.1c (1998). This is a logical culmination of the foregoing rules and Indiana's "continuing crime doctrine." The continuing crime doctrine provides that "actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Riehle v. State,* 823 N.E.2d 287, 296 (Ind.Ct.App.2005), *trans. denied.*

For instance, our Supreme Court addressed a case of "single transaction" charging in *Brogan v. State,* 199 Ind. 203, 156 N.E. 515 (1927). In *Brogan,* the defendant was charged with a one count of burglary. *Id.* at 204, 156 N.E. at 516. The charging affidavit alleged that on a specified date, the defendant did "break and enter into four railroad cars, the numbers being PFE–11038, SRL–16891, NADX–1984, PFE–20794, of the New York, Chicago & St. Louis Railroad Company, then and there situate, with intent then and there feloniously and burglariously to take, steal, and carry away the goods and chattels, in the possession of and consigned for transfer to the New York, Chicago & St. Louis Railroad Company." *Id.* The defendant claimed that the charging affidavit was duplicitous for alleging four distinct offenses. *Id.* Our Supreme Court

disagreed. *Id.* at 204–06, 156 N.E. at 516. The Court explained that "[a]n indictment or affidavit is not bad for duplicity for joining in one count, as one offense, offenses committed at the same time, by the same person, as parts of the same transaction, and subjecting defendant to the same punishment." *Id.* at 204–05, 156 N.E. at 516. The Court concluded that the charging affidavit was not improper, for the alleged breaking and entering into four railroad cars "occurred at the same time and place and was a single transaction." *Id.* at 205, 156 N.E. at 516; *see also Chambers v. State,* 212 Ind. 667, 669, 10 N.E.2d 735, 736 (1937) (where defendant was charged with single count of perjury based on several false statements, charging affidavit held not duplicitous).

In this case the charged offense was resisting law enforcement. Indiana's resisting law enforcement statute provides as follows:

(a) A person who knowingly or intentionally:

(1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties;

(2) forcibly resists, obstructs, or interferes with the authorized service or execution of a civil or criminal process or order of a court; or

(3) flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop;

commits resisting law enforcement, a Class A misdemeanor . . . .

Ind.Code § 35–44–3–3.

This Court has previously explained that resisting law enforcement is not a crime against the person. *Armstead v. State,* 549 N.E.2d 400, 401 (Ind.Ct.App.1990). Rather, it is an interference with governmental operations that constitutes an offense against public administration. *Id.* A person who violates Section 35–44–3–3 harms the peace and dignity of the State and its law enforcement authority, and the harm caused by one incident is the same regardless of the number of police officers resisted. *Id.* It is the act of resisting duly constituted authority that the statute prohibits, not resisting individual representatives of that authority. *Id.*

For that reason, the general rule is that in a single, continuous episode of resisting law enforcement, "only one offense is committed regardless of the number of officers involved." *Touchstone v. State,* 618 N.E.2d 48, 49 (Ind.Ct.App. 1993). There are exceptions. This Court has held that a defendant may be convicted on multiple counts stemming from a single incident of resisting if he commits more than one of the acts enumerated under Section 35–44–3–3. *Williams v. State,* 755 N.E.2d 1183, 1186 (Ind.Ct.App. 2001). We have also upheld multiple convictions when a single incident of resisting results in physical injury to more than one officer. *See Whaley v. State,* 843 N.E.2d 1, 14–15 (Ind.Ct.App.2006), *trans. denied.* But where through one continuous act of flight a defendant merely evades several police officers, only a single instance of resisting law enforcement occurs. *See Miller v. State,* 726 N.E.2d 349, 352 (Ind.Ct. App.2000), *summarily aff'd in relevant part,* 753 N.E.2d 1284 (Ind.2001), *reh'g denied.*

Here the State alleged that Vest "did knowingly flee" from Officers "Geoffrey Barbieri and/or Josh Taylor and/or Joel Anderson." The State charged Vest with resisting law enforcement only by flight,

and the alleged acts of evasion all took place within one uninterrupted episode of pursuit and arrest. Officer Barbieri instructed Vest to get on the ground, Vest disobeyed and ran out into the hallway, Officer Taylor ordered him to stop, and Vest darted back into the bedroom. The entire incident lasted less than two minutes. In line with *Brogan, Armstead, Touchstone,* and *Miller,* we conclude that the State prosecuted Vest for only a single instance of resisting law enforcement and properly joined all allegations into a single count. The police officers were the equivalent of "alternative means" by which Vest accomplished his resisting, and jurors were not required to agree on which particular officer Vest fled. Moreover, had Vest been charged with and convicted of three separate resisting counts, we would have found the charges multiplicitous and vacated two of the convictions. *See Miller,* 726 N.E.2d at 352. The State's information therefore was not duplicitous for naming all three officers, and the trial court did not err when it did not issue a more specific unanimity instruction to the jury. We find no error, let alone fundamental error, and we affirm the judgment of the trial court.

Affirmed.

NAJAM, J., and BROWN, J., concur.