



FILED
Apr 23 2026, 9:04 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE

# Court of Appeals of Indiana

Roy C. Robinson,

*Appellant-Defendant*

*v.*

State of Indiana,

*Appellee-Plaintiff*

---

April 23, 2026

Court of Appeals Case No.
24A-CR-1814

Appeal from the Marion Superior Court

The Honorable Angela D. Davis, Judge
The Honorable Ross F. Anderson, Magistrate

Trial Court Cause No.
49D27-2303-F1-7865

---

## Opinion by Judge Bradford

Judges Bailey and Foley concur.

**Bradford, Judge.**

# Case Summary

[1] This case comes to us on remand from the Indiana Supreme Court for reconsideration in light of its decision in *Moyers v. State*, 2026 WL 786823 (March 20, 2026). In March of 2023, the armed Roy Robinson forced K.F. into his car in Indianapolis, forced her to touch his penis and fellate him, and penetrated her vagina and anus with a prosthetic penis. K.F. managed to escape and alert the authorities, who apprehended Robinson after he crashed his car into another vehicle, injuring its two passengers.

[2] The State charged Robinson with two counts of Level 1 felony rape, Level 1 felony attempted rape, Level 3 felony kidnapping, Level 3 felony criminal confinement, Level 5 felony kidnapping, Level 5 felony criminal confinement, Level 6 felony operating a vehicle as a habitual traffic violator, Level 6 felony resisting law enforcement while operating a vehicle, and Level 6 felony resisting law enforcement causing bodily injury. After a jury convicted Robinson as charged and he pled guilty to being a habitual offender, the trial court entered judgment of conviction on all counts except Level 5 felony kidnapping and Level 5 felony criminal confinement and sentenced Robinson to an aggregate term of forty-four years of incarceration.

[3]    Robinson contends that fundamental error occurred when the trial court failed to instruct the jury that it must unanimously agree on which particular acts supported each charge of Level 1 felony rape. Robinson also contends that his convictions for Level 6 felony resisting law enforcement while operating a vehicle and Level 6 felony resisting law enforcement causing bodily injury violate Indiana prohibitions against substantive double jeopardy. We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

[4]    On March 13, 2023, K.F. was near the corner of 16th and Dequincy in Indianapolis when Robinson drove by and asked her if she needed a ride. Robinson's car had a "Lyft or, you know, Uber thing in the window[,]" and he drove off when K.F. told him that she did not need a ride. Tr. Vol. III p. 169. Robinson soon returned and said that he was going to take the bus because he had had too much to drink. Robinson approached, and K.F. felt something in the side of her stomach. Robinson said, "Don't say anything, or I'll put it in your belly" and forced her into his car. Tr. Vol. III p. 170.

[5]    Robinson, who was smoking crack cocaine and drinking alcohol, drove off and eventually arrived at the parking lot of what appeared to be an old warehouse. K.F. had noticed knives, binoculars, and what appeared to be a gun in the car. Robinson parked his car in such a way as to prevent K.F.'s escape from the parking lot but allowed her out of the car briefly to urinate and defecate. Robinson, who had already forced K.F. to touch his penis, struck her in the face with a strap-on prosthetic penis as she relieved herself. Robinson drove to

a park, where he forced K.F. to fellate him and penetrated K.F.'s vagina with the prosthetic penis because he was unable to get an erection. Tr. Vol. III p. 174. While this was occurring, Robinson told K.F. to call him "Daddy J" and "Master J" and said, "I want to hear you say f[***] me like your step daddy used to do." Tr. Vol. III pp. 174, 175. After Robinson repeatedly penetrated K.F.'s vagina and anus with the prosthetic penis, K.F. told him that she had a friend who liked being dominated and hurt and suggested that they go to her.

[6] At K.F.'s direction, Robinson returned to the area of K.F.'s abduction and, when he allowed her out of the car, she ran to a nearby liquor store and contacted police. After police arrived, K.F. identified Robinson's car when he happened to drive by. Police followed, stopped Robinson's car, and commanded him to exit. Instead of exiting, Robinson fled westbound on 16th Street with police in pursuit at approximately ninety-two miles per hour, finally crashing into a van at the intersection of 16th and Sherman Drive. Jose Robert Leon Utrera and Marcelo Leon Utrera were in the van; Jose suffered "pain in the back of [his] head and [his] back" that became worse over time and lasted until trial, Tr. Vol. IV p. 57,[1] while Marcello eventually "started feeling pain in [his] neck and [his] back" severe enough to cause sleep deprivation. Tr. Vol. IV p. 66.

---

[1] Volume IV of the transcript is mistakenly identified as "VOLUME 3 OF 5" on its title page. Tr. Vol. IV p. 1.

[7] On March 19, 2023, the State charged Robinson with two counts of Level 1 felony rape, Level 1 felony attempted rape, Level 3 felony kidnapping, Level 3 felony criminal confinement, Level 5 felony kidnapping, Level 5 felony criminal confinement, Level 6 felony operating a vehicle as a habitual traffic violator, Level 6 felony resisting law enforcement while operating a vehicle, and Level 6 felony resisting law enforcement causing bodily injury to Jose and/or Marcelo. On December 29, 2023, the State filed notice of intent to seek a habitual-offender enhancement.

[8] A two-day jury trial was held, and Robinson did not object to the trial court's jury instructions or tender his own instructions regarding jury unanimity. The jury found Robinson guilty as charged, and Robinson pled guilty to being a habitual offender. At sentencing, the trial court vacated one count of kidnapping and one count of criminal confinement due to double-jeopardy concerns. The trial court sentenced Robinson to thirty-eight years of incarceration for each of his rape and attempted rape convictions, twenty years for kidnapping, ten years for criminal confinement, two years for operating a vehicle as a habitual traffic violator, and two years for each of his two convictions for resisting law enforcement, with all sentences to run concurrently. The trial court enhanced Robinson's sentence six years by virtue of Robinson's status as a habitual offender.

## Discussion and Decision

### I.    Jury-Unanimity Instruction

Robinson argues that because the State chose not to allege specific acts for counts one and three, the jurors should have been instructed that they must be unanimous on which act supports each count. "In Indiana, a verdict in a criminal case must be unanimous." *Calvert v. State*, 177 N.E.3d 107, 111 (Ind. Ct. App. 2021) (citing *Fisher v. State*, 259 Ind. 633, 646, 291 N.E.2d 76, 82 (1973)), *trans. denied*. A potential unanimity problem may exist where there is a disjunctive charging information or jury instruction, or where the State presents evidence of a greater number of separate criminal offenses than that with which the defendant is charged. *Baker v. State*, 948 N.E.2d 1169, 1175 (Ind. 2011). An information or instruction is disjunctive if it joins "separate and distinct offenses in one and the same count." *Id*. (citing *Vest v. State*, 930 N.E.2d 1221, 1225 (Ind. Ct. App. 2010), *trans. denied*). "A single count of a charging pleading may include but a single offense." *Townsend v. State*, 632 N.E.2d 727, 730 (Ind. 1994). When one count improperly alleges two or more separate offenses, "[d]uplicity" occurs. *Vest*, 930 N.E.2d at 1225. "Duplicity is unacceptable because it prevents the jury from deciding guilt or innocence on each offense separately and may make it difficult to determine whether the conviction rested on only one of the offenses or both." *Id*. (citation and quotation marks omitted).

While we generally review jury instructions for an abuse of discretion, *Ellis v. State*, 194 N.E.3d 1205, 1214 (Ind. Ct. App. 2022), *trans. denied*, Robinson

neither objected to the jury instructions that were given nor tendered his own unanimity instruction and has therefore waived the issue for appellate review. *Baker*, 948 N.E.2d at 1178. Robinson attempts to avoid the effects of his waiver by contending that fundamental error has occurred.

> In order to be fundamental, the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process. The error must be so prejudicial to the defendant's rights as to make a fair trial impossible. In considering whether a claimed error denied the defendant a fair trial, we determine whether the resulting harm or potential for harm is substantial. Harm is not shown by the fact that the defendant was ultimately convicted. Rather, harm is determined by whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled.

*Id*. at 1178–79 (citations omitted).

[11] The State's two charges for Level 1 felony rape both alleged in identical language[2] that Robinson had committed rape by "other sexual conduct[,]" which "means an act involving […] a sex organ of one (1) person and the mouth or anus of another person; or […] the penetration of the sex organ or anus of a person by an object." Ind. Code § 35-31.5-2-221.5. These charges,

---

[2] Counts I and III both read as follows:

> On or about March 13, 2023, ROY C ROBINSON did knowingly or intentionally cause another person to perform or submit to other sexual conduct as defined in I.C. 35-31.5-2-221.5 with [K.F.]; when such person was compelled by force, and/or compelled by the imminent threat of force and ROY C ROBINSON being armed with a deadly weapon[.]

Appellant's App. Vol. II p. 148.

however, are not examples of duplicity in charging. They are, rather, examples of something the State is permitted to do, which is "allege alternative means or theories of culpability when prosecuting the defendant for a single offense." *Baker*, 948 N.E.2d at 1175 (citation and quotation marks omitted). "In essence the State is permitted to 'present[] the jury with alternative ways to find the defendant guilty as to *one element*.'" *Baker*, 948 N.E.2d at 1175 (quoting *Cliver v. State*, 666 N.E.2d 59, 67 (Ind. 1996)) (brackets in *Baker*; emphasis in *Cliver*). For each rape count in this case, the different acts that could have qualified as "other sexual conduct" were merely alternate means or theories of culpability confined to one element of the crime. Because Robinson has failed to establish that duplicity in the charges against him warranted a unanimity instruction, he has failed to establish fundamental error.[3]

## II. Double Jeopardy

[12] Robinson contends that his two convictions for Level 6 felony resisting law enforcement violate Indiana prohibitions against substantive double jeopardy. "Substantive double-jeopardy claims principally arise in one of two situations: (1) when a single criminal act or transaction violates multiple statutes with common elements, or (2) when a single criminal act or transaction violates a single statute and results in multiple injuries." *Powell v. State*, 151 N.E.3d 256, 263 (Ind. 2020). The analysis laid out in *Wadle v. State*, 151 N.E.3d 227 (Ind.

---

[3] Even defectively duplicitous charges would, we think, be insufficient to establish fundamental error. While such charges generate the *possibility* that the jury did not unanimously agree on which acts supported which charge, this, by itself, falls short of establishing that a fair trial was rendered impossible.

2020), governs the first category of cases, while *Powell*'s analysis covers the second. *Id.*

[13] In this case, *Powell* applies. In *Moyers*, the Indiana Supreme Court provided guidance regarding the meaning of "'single statutory offense[,]'" clarifying "that a base offense and its elevated forms constitute a single statutory offense for purposes of determining whether to apply *Wadle* or *Powell*." 2026 WL 786823 at *3. The *Moyers* court identified three broad categories of criminal cases, of which categories this case belongs to the first: "Category One includes statutes that define a base offense and elevated offenses as a single statutory offense, rendering *Powell* the proper test." *Id.* at *4. Both of Robinson's convictions for Level 6 felony resisting law enforcement consist of the same base offense of "knowingly or intentionally forcibly resist[ing] JOSEPH DRANSFIELD, a law enforcement officer, which said officer was lawfully engaged in his duties as a law enforcement officer[.]" Appellant's App. Vol. II p. 45. Count IX was enhanced to a Level 6 felony because Robinson had been "operat[ing] a vehicle[,]" and Count X was similarly enhanced because he had "inflicted bodily injury on or otherwise caused bodily injury to Jose Utrera and/or Marcelo Utrera by pain[.]" Appellant's App. Vol. II p. 45.

[14] The first step in the *Powell* analysis is to "review the text of the statute to identify the appropriate 'unit of prosecution.'" *Jones v. State*, 159 N.E.3d 55, 63 (Ind. Ct. App. 2020) (quoting *Powell*, 151 N.E.3d at 265), *trans. denied*. "[A] unit of prosecution is 'the minimum amount of activity a defendant must undertake, what he must do, to commit each new and independent violation of

a criminal statute[.]'" *Barrozo v. State*, 156 N.E.3d 718, 725 (Ind. Ct. App. 2020) (quoting *U.S. v. Rentz*, 777 F.3d 1105, 1109 (10th Cir. 2015)). The resisting-law-enforcement statute is a "conduct-based crime" because the minimum amount of activity required to commit the offense is the act of resisting law enforcement, not the result of the resistance or the means of committing the resistance. *Jones*, 159 N.E.3d at 64 (discussing the conduct-based statute of kidnapping). "[U]nder a conduct-based statute, 'a single discrete incident can be the basis for only one conviction[.]'" *Powell*, 151 N.E.3d at 266 (quoting *Paquette v. State*, 101 N.E.3d 234, 239 (Ind. 2018)).

[15] The question, then, is whether Robinson's two convictions were based on one or two discrete incidents, and to answer that, "we must […] examine the facts to determine whether the defendant's actions are 'so compressed in terms of time, place, singleness of purpose and continuity of action as to constitute a single transaction.'" *Jones*, 159 N.E.3d at 63 (quoting *Powell*, 151 N.E.3d at 264). If criminal acts are sufficiently distinct, multiple convictions may stand; however, if the acts are continuous and indistinguishable, only a single conviction may stand. *Powell*, 151 N.E.3d at 264–65. "Any doubt counsels against turning a single transaction into multiple offenses." *Id*. at 265 (internal quotation and citation omitted).

[16] Here, there was only one continuous act of resisting law enforcement. Police stopped Robinson a few blocks from the store to which they had initially responded, and there is no evidence that Robinson had done anything that could have amounted to resisting law enforcement before that. After Robinson

pulled over and was commanded to exit the vehicle, however, he resisted law enforcement by fleeing in his vehicle. While in flight during this same episode of resisting, Robinson crashed into a van, injuring two persons. We have little hesitation in concluding that Robinson's one continuous act of resisting law enforcement was so compressed in terms of time, place, singleness of purpose and continuity of action as to constitute a single transaction. Consequently, Robinson's two convictions for this single episode of resisting law enforcement violate substantive double-jeopardy principles.

[17]     Under such circumstances, we generally

> remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation. If it will not, one of the convictions must be vacated. In the interest of efficient judicial administration, the trial court need not undertake a full sentencing reevaluation, but rather the reviewing court will make this determination itself, being mindful of the penal consequences that the trial court found appropriate.

*Noble v. State*, 734 N.E.2d 1119, 1125 (Ind. Ct. App. 2000) (citations omitted), *trans. denied*. Here, Robinson's two convictions for resisting law enforcement were both Level 6 felonies, and the sentences imposed for each conviction were of equal duration, ordered to run concurrently. When "there are no more or less severe penal consequences for vacating one instead of the other[,]" we will simply choose one conviction to be vacated. *Id*. at 1126. We remand with instructions for the trial court to vacate Robinson's conviction and sentence for Count X and affirm the judgment of the trial court in all other respects.

[18]     We affirm the judgment of the trial court in part, reverse in part, and remand with instructions.

Bailey, J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

Christopher Taylor-Price
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Michelle Hawk Kazmierczak
Deputy Attorney General
Indianapolis, Indiana