**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**PATRICIA CARESS MCMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ELON BROWN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1402-CR-83 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Peggy Hart, Commissioner
Cause No. 49G20-1304-FB-026011

**September 25, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

## Case Summary

Elon Brown appeals his convictions for Class B felony unlawful possession of a firearm by a serious violent felon and Class A misdemeanor resisting law enforcement. Brown argues that he did not knowingly and intelligently waive his right to counsel, his conviction for resisting law enforcement is not the product of a unanimous jury verdict, and the trial court erred in sentencing him. Because we find no merit in any of these claims, we affirm.

## Facts and Procedural History

Just before midnight on April 20, 2013, Indianapolis Metropolitan Police Department Detective Todd Wellman responded to a domestic-disturbance call at an apartment complex in Indianapolis. When Detective Wellman arrived, he spoke to Isabelle Demeuter, Brown's wife. Isabelle told the detective that she had confronted Brown about his use of dating websites. Tr. p. 72, 97-99. This angered Brown, who retrieved a gun from the closet and left the home. *Id.* at 98-99. After speaking with Isabelle, Detective Wellman returned to his police car.

While Detective Wellman was sitting in his police car, Brown pulled up to the apartment complex in a gold Pontiac Aztec. *Id.* at 81-82, 131. Detective Wellman approached Brown's car. The driver's door was ajar, and Detective Wellman told Brown to show his hands. *Id.* at 82. Brown refused, saying that he "did not have a contract with [Detective Wellman] and therefore was not subject to [the detective's] demands." *Id.*

Detective Wellman identified himself as a police officer and again directed Brown to show his hands. *Id.* at 83. Again, Brown refused. *Id.* Believing that Brown was

2

armed, the detective drew his gun and called for backup. *Id.* at 82, 83. When Brown began to get out of the car, Detective Wellman holstered his gun and pushed Brown against the car, telling him to put his hands behind his back. *Id.* at 85. Brown refused and tried to spin around to face the detective. *Id.* At this point, Detective Wellman heard a "metallic thunk against the car," and saw a silver object inside Brown's coat pocket. *Id.* at 85-86. Brown continued to struggle with Detective Wellman despite the detective's continued directions to place his hands behind his back. *Id.* During the struggle, Brown complained of a shoulder injury, and the detective replied that "if [Brown] would stop fighting, [he] would place the handcuffs in front of him," to accommodate Brown's injury. *Id.* at 86. Brown stopped struggling, and Detective Wellman retrieved a small semiautomatic handgun from Brown's pocket. *Id.* at 86-87, 91.

A second police officer, Officer Dennis Lowe, arrived at the scene. *Id.* at 87. Detective Wellman asked Officer Lowe to stay with Brown while he searched the front seat of Brown's car. While Detective Wellman was searching, he heard a disturbance. *Id.* at 88. When he looked up, he saw Officer Lowe "struggling, tussling if you will, with Mr. Brown." *Id.* When Detective Wellman went to help Officer Lowe, he saw:

> Officer Lowe [] ordering Mr. Brown onto the ground. He was trying to get him down. Mr. Brown was pulling away from him and saying that we were making an unlawful arrest and an unlawful detainment and [he] continued to disobey Officer Lowe's commands and tr[ied] to pull away from him.

*Id.* at 88-89. Detective Wellman tried to assist Officer Lowe, but Brown fought against both officers. *Id.* at 89. Two more police officers arrived at the scene. Ultimately, it took the effort of three police officers—Detective Wellman, Officer Lowe, and a third officer—to subdue Brown. *Id.*

In April 2013 the State charged Brown with Count I: Class B felony unlawful possession of a firearm by a serious violent felon and Count II: Class A misdemeanor resisting law enforcement. The trial court appointed a public defender, Matthew Keyes, to represent Brown. Seven months later, Brown filed a written motion indicating that he was not fully satisfied with his public defender's performance and wished to proceed pro se.[1] *See* Appellant's App. p. 45-46. The trial court addressed Brown's motion at the final pretrial hearing:

TRIAL COURT: [M]r. Brown, your attorney Mr. Keyes has indicated that you do not – no longer wish to have him represent you. Is that correct?

BROWN: Objection. I don't go by the name Mr. Brown.

TRIAL COURT: Okay.

BROWN: My name is Elon. You can just call me Elon.

TRIAL COURT: All right –

BROWN: And I'll be proceeding (unintelligible) without Mr. Keyes or his legal counsel.

TRIAL COURT: Okay. This is a courtroom, sir. You answer my questions. If you don't answer my questions, I'll hold you in contempt. Okay. It's very simple. Just answer the question. Do you want Mr. Keyes to represent you? Yes or no?

BROWN: No ma'am. No ma'am.

TRIAL COURT: Okay. Do you understand that you have a jury trial that's scheduled again for the – I think it's the second or third setting, is that correct?

MR. KEYES: Second.

---

[1] Specifically, Brown stated that he wished to proceed *sui juris*, which is Latin for "of one's own right; independent." *Black's Law Dictionary* 1662 (10th ed. 2014).

4

TRIAL COURT:    Second setting. It's set for Tuesday, December 3rd, 2013. Do you understand that? Yes or no?

BROWN:    It's set for what date? I'm sorry. What time?

TRIAL COURT:    December 3rd, 2013, at 8:30 in the morning. Do you understand that?

BROWN:    Well, I have no –

TRIAL COURT:    Just say yes or no.

BROWN:    Well, the thing is I had –

TRIAL COURT:    No. Just say yes or no.

BROWN:    Do I – no. I do not understand that.

TRIAL COURT:    Okay. Well I'm telling you it is. Do you wish to represent yourself or do you wish to hire another attorney?

BROWN:    I don't understand what you mean by representing myself.

TRIAL COURT:    Okay. Well I guess you'll figure that out.

BROWN:    Can you further explain that please?

TRIAL COURT:    No. You will appear before a trial by jury on December 3rd, 2013. Your next court appearance is – at that time is at 8:30 in the morning. If you don't understand that, that's unfortunate because I've told you several times now. Okay. And in fact last time you were here, you respectfully asked for a continuance due to the fact of a religious holiday and I actually gave it to you so that you would be ready on that date. At that time there [were] no objections . . . and therefore I granted the same. So again, for the fourth time today –

5

BROWN: Well ma'am, I'll have to object to that because I have recently just filed a motion for discovery of all the parties involved and I have not received full discovery.

TRIAL COURT: Okay. Well –

BROWN: So I believe the prosecution and all parties involved will need time to produce that discovery as well as other documents and records and anything else that's well – will be used in this case.

TRIAL COURT: Sir, did you go to law school?

BROWN: Go to law school?

TRIAL COURT: Yes.

BROWN: No. I did not go to law school.

TRIAL COURT: Did you go to college?

BROWN: Yes. I did go to college.

TRIAL COURT: Did you graduate high school?

BROWN: Ma'am, I choose to exercise my rights and not disclose that information because I don't see the relevancy of it.

TRIAL COURT: Well, I'm telling you what the relevancy is. Okay.

BROWN: Well, I choose not to disclose that information with all due respect.

TRIAL COURT: That's nice. The relevancy is this. You're choosing to represent yourself. You must understand that on Tuesday, you are going to appear in front of a trial by jury. And the State is going to be represented by Mr. Burney, is that correct?

MR. BURNEY: Correct.

TRIAL COURT: Mr. Burney went to law school. Mr. Burney graduated. He sat for the Indiana State Bar exam and he passed. What that means is [] that he's probably

6

more familiar with the Rules of Evidence than you are, sir. So I must warn you and caution you that you have an absolute right to represent yourself at trial next week. However, please be mindful of the fact that you are in a very severe disadvantage because you do not have the legal training and/or expertise as Mr. Burney. So I just need to caution you. Do you understand that?

MR. BROWN: Do I understand –

TRIAL COURT: It's like do you know basketball? Have you ever – do you know what basketball is all about?

BROWN: Yes. I do.

TRIAL COURT: Do you remember Michael Jordan?

BROWN: I do.

THE COURT: Okay. He was one of the favorites in the 80's. Okay. So it's just like if you are – if you've never played college ball and you never played in the NBA, if I ordered you to have a one-on-one – let's say this was 1985. If I ordered you to take on Michael Jordan in a one-on-one game, do you think he might have a little bit of advantage over you in the game of basketball?

BROWN: Possibly.

THE COURT: Exactly. And that's all I'm trying to point out, is that Mr. Burney might have a little advantage on you because of the schooling, training, and experience that he has. So that's why the Constitution says, hey, every defendant is entitled to a lawyer, a lawyer that has the same training, expertise and experience, because otherwise the playing field is off. Mr. Burney has all this legal experience. You don't necessarily have any. That's why we appointed Mr. Keyes so the playing field will be even.

BROWN: I –

TRIAL COURT: And it's an adversarial system, Mr. [Burney] against Mr. Keyes, and that way to keep things fair.

7

BROWN:            Well, isn't it an obvious conflict of interest –

TRIAL COURT:    So you can represent yourself, but just know because you don't have his experience, it might be tipped. And here's the other thing, too. When we go to trial on Tuesday, I can't help you. Even though I may want to help you, I can't tell you when to object, how to object, how to make certain objections, how to preserve certain issues for appellate purposes. I can't help you. I'm going to hold you to the same standard I'm going to hold that man to. I have to be fair and impartial. So, knowing what you know now, do you still want to proceed by yourself or do you want Mr. Keyes to remain on the case and represent you?

BROWN:            I'll choose my own legal counsel.

TRIAL COURT:    Okay. And who is that going to be?

BROWN:            That's going to be me.

TRIAL COURT:    All right. Let the record reflect that I find the Defendant knowingly and intelligently has waived his constitutional right to be represented by an attorney and he is choosing to represent himself[.]

Tr. p. 9-15.

Brown represented himself at trial, and a jury found him guilty as charged. Brown also represented himself at sentencing. Before announcing Brown's sentence, the trial court said:

Mr. Brown, I have read your PSI and have listened to your evidence and the State's argument and your statement here and quite frankly, I don't find any mitigating factors. As far as aggravating, you do have a history of delinquent and criminal behavior. Therefore I'm going to give you – your sentence will be more than the advisory sentence.

*Id.* at 259-60. The court then sentenced Brown to thirteen years executed on Count I and one year executed on Count II, to run concurrently. *Id.* at 260.

8

Brown now appeals.

## Discussion and Decision

Brown argues that he did not knowingly and intelligently waive his right to counsel, his conviction for resisting law enforcement is not the product of a unanimous jury verdict, and the trial court erred in sentencing him.

## I. Waiver of the Right to Counsel

Brown first contends that he did not knowingly and intelligently waive his right to counsel.

The Sixth Amendment, applicable to the states through the Fourteenth Amendment, guarantees a criminal defendant the right to counsel before he may be tried, convicted, and punished. *Hopper v. State*, 957 N.E.2d 613, 617 (Ind. 2011) (citing *Faretta v. California*, 422 U.S. 806, 807 (1975)). This protection also encompasses a defendant's affirmative right to represent himself in a criminal case. *Id.* However, "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." *Faretta*, 422 U.S. at 834.

The defendant who waives his right to counsel and proceeds to trial unrepresented is forgoing "many of the traditional benefits associated with the right to counsel," and in order to represent himself, the accused must "knowingly and intelligently forgo those relinquished benefits." *Id.* at 835. "[H]e should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). There is no particular formula or script that

9

must be read to the defendant. *Hopper*, 957 N.E.2d at 618. "The information that must be given 'will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.'" *Id.* (quoting *Iowa v. Tovar*, 541 U.S. 77, 88 (2004)).

Courts determining whether a waiver of counsel was made knowingly and intelligently must consider: (1) the extent of the court's inquiry into the defendant's decision; (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation; (3) the background and experience of the defendant; and (4) the context of the defendant's decision to proceed pro se. *Id.* These factors are taken from case law from the Seventh Circuit, *see United States v. Hoskins*, 243 F.3d 407 (7th Cir. 2001), and applied to situations as diverse as trial for battery, *Poynter v. State*, 749 N.E.2d 1122 (Ind. 2001), and capital murder, *Kubsch v. State*, 866 N.E.2d 726 (Ind. 2007), *reh'g denied. Hopper*, 957 N.E.2d at 618. We review de novo a trial court's determination that a defendant validly waived the right to counsel. *Ellerman v. State*, 786 N.E.2d 788, 794 (Ind. Ct. App. 2003) (citing *Balfour v. State*, 779 N.E.2d 1211 (Ind. Ct. App. 2002)).

Here, the trial court inquired at length into Brown's decision to proceed pro se. The court asked Brown about his education and explained the advantage the prosecutor would have over Brown—even utilizing a basketball analogy to make this point. The court also explained its duty to be fair and impartial at trial, telling Brown that it could not help him make objections or preserve issues for appeal. As for Brown's educational background and legal experience, Brown attended high school and college. Brown also

10

has previous experience with the legal system: he has juvenile adjudications for what would have been felony child molesting if committed by an adult, as well as trespassing. As an adult, he has convictions for receiving stolen property, carrying a handgun without a license, possession of marijuana, and burglary. We can attribute some level of familiarity with the legal system to Brown due to his criminal history. Finally, with respect to the context of Brown's decision to proceed pro se, Brown initially sought to represent himself because he said he was unsatisfied with his public defender's performance. The record, however—replete with Brown's repeated interruptions and unfounded objections—makes it clear that Brown simply intended to delay his inevitable trial. When he was unable to do so, he decided to represent himself.

When a defendant asserts the right of self-representation, the court should tell the defendant of the "dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835. Here, the trial court advised Brown—at length and using a relatable sports analogy—of the dangers and disadvantages of self-representation. The court's thorough advisement supports our conclusion that Brown knowingly and intelligently waived his right to counsel.

## II. Jury Unanimity

Brown next contends that his conviction for resisting law enforcement should be reversed because it is not the product of a unanimous jury verdict. Specifically, he argues that it is not clear whether the jury convicted him of resisting Detective Wellman or Officer Lowe, and the trial court did not instruct the jury that they would have to agree unanimously as to which officer he resisted. *See* Appellant's Br. p. 10-11.

11

Indiana has long required that a verdict of guilty in a criminal case "must be unanimous." *Baker v. State*, 948 N.E.2d 1169, 1173-74 (Ind. 2011) (citing *Fisher v. State*, 259 Ind. 633, 291 N.E.2d 76, 92 (1973)). While jury unanimity is required as to the defendant's guilt, it is not required as to the theory of the defendant's culpability. *Taylor v. State*, 840 N.E.2d 324, 333 (Ind. 2006).

The State charged Brown with a single count of resisting law enforcement under Indiana Code section 35-44.1-3-1(a).[2] This Court has previously explained that resisting law enforcement is not a crime against the person. *Armstead v. State*, 549 N.E.2d 400, 401 (Ind. Ct. App. 1990). Rather, it is an interference with governmental operations that constitutes an offense against public administration. *Id.* A person who resists law enforcement harms the peace and dignity of the State and its law-enforcement authority, and the harm caused by one incident is the same regardless of the number of police officers resisted. *Id.* It is the act of resisting duly constituted authority that the statute prohibits, not resisting individual representatives of that authority. *Id.*

For that reason, the general rule is that in a single, continuous episode of resisting law enforcement, "only one offense is committed regardless of the number of officers involved." *Vest v. State*, 930 N.E.2d 1221, 1227 (Ind. Ct. App. 2010) (citing *Touchstone v. State*, 618 N.E.2d 48, 49 (Ind. Ct. App. 1993)), *trans. denied*. The facts may disclose a single episode of resistance where a defendant temporarily ceases resisting but later resumes that resistance. *Touchstone*, 618 N.E.2d at 49. There are exceptions, however. This Court has held that a defendant may be convicted on multiple counts stemming from

---

[2] Brown was charged and convicted before the amendments to the criminal code took effect in July 2014. The changes to the criminal code do not impact our analysis.

a single incident of resisting if he commits two separate and distinct acts of resistance. *Vest*, 930 N.E.2d at 1227 (citing *Williams v. State*, 755 N.E.2d 1183, 1186 (Ind. Ct. App. 2001)). We have also upheld multiple convictions when a single incident of resisting results in physical injury to more than one officer. *Id.* (citing *Whaley v. State*, 843 N.E.2d 1, 14-15 (Ind. Ct. App. 2006), *trans. denied*). But where through one continuous act of flight a defendant merely evades several police officers, only a single instance of resisting law enforcement occurs. *Id.* (citing *Miller v. State*, 726 N.E.2d 349, 352 (Ind. Ct. App. 2000), *summarily aff'd in relevant part*, 753 N.E.2d 1284 (Ind. 2001), *reh'g denied*).

In *Vest v. State*, three police officers from the IMPD responded to a domestic-disturbance report. When they arrived, they observed Vest inside a home. One officer, Officer Barbieri, saw Vest attempting to climb out a window. Officer Barbieri instructed Vest to get on the ground, but Vest disobeyed and ran into a hallway. When another officer, Officer Taylor, ordered him to stop, Vest darted back into the bedroom. Officer Taylor and a third officer, Officer Anderson, then chased Vest into the room and tackled him on the bed. The officers cuffed him and took him into custody, and the entire incident lasted less than two minutes. Vest was accused of fleeing from three police officers all within a single episode of pursuit and arrest. The State's charging information alleged that Vest knowingly fled from Indianapolis Metropolitan Police Department Officers "Geoffrey Barbieri and/or Josh Taylor and/or Joel Anderson." The trial court did not instruct jurors that, in order to return a guilty verdict, they would have to agree unanimously as to which officer Vest fled. On appeal, Vest argued that the trial court erred by failing to do so. We disagreed, explaining that "the police officers were

13

the equivalent of 'alternative means' by which Vest accomplished his resisting, and jurors were not required to agree on which particular officer Vest fled." *Vest*, 930 N.E.2d at 1228.

The same is true here. In a very short time frame, Brown resisted Detective Wellman, then Officer Lowe, and then the two officers together. Detective Wellman first struggled to handcuff Brown because Brown refused to place his hands behind his back. When Brown complied, Detective Wellman turned Brown over to Officer Lowe so that Detective Wellman could search the front seat of Brown's car. When he began to search, Detective Wellman heard Brown struggling with Officer Lowe. Detective Wellman returned to help Officer Lowe, and Brown fought against both officers. It ultimately took the efforts of three officers—Detective Wellman, Officer Lowe, and a third officer—to subdue Brown. As in *Vest*, the police officers in this case were the equivalent of alternative means by which Brown accomplished his resisting. Thus, jurors were not required to agree on which particular officer Brown resisted. We find no error here.[3]

### III. Sentencing

Finally, Brown contends that the trial court erred in sentencing him for Class B felony unlawful possession of a firearm by a serious violent felon. He argues that the trial court "mistakenly believed it had to impose a sentence above the advisory sentence because it found aggravating circumstances but no mitigating circumstances . . . ." Appellant's Br. p. 12.

---

[3] Brown claims that this was not a single episode of resistance. We disagree. The record suggests that Brown's struggles with Detective Wellman and Officer Lowe occurred in a very short time frame; at one point, Brown struggled with both officers simultaneously. *See Vest*, 930 N.E.2d at 1228; *Touchstone*, 618 N.E.2d at 49.

14

Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion will be found where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490-91. Because the trial court no longer has any obligation to weigh aggravating and mitigating factors against each other when imposing a sentence, a trial court cannot now be said to have abused its discretion in failing to properly weigh such factors. *Id.* at 491.

Brown was convicted of Class B felony unlawful possession of a firearm by a serious violent felon. The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). The advisory sentence for a Class B felony is ten years, with a minimum of six and a maximum of twenty years. Ind. Code § 35-50-2-5. Here, the trial court imposed a thirteen-year sentence. Brown argues that this was error: he claims that the trial court mistakenly believed it *had* to impose an enhanced sentence because it

15

found an aggravating factor but no mitigating factors. But the trial court's own words do not suggest that this was so. The court stated:

> Mr. Brown, I have read your PSI and have listened to your evidence and the State's argument and your statement here and quite frankly, I don't find any mitigating factors. As far as aggravating, you do have a history of delinquent and criminal behavior. Therefore I'm going to give you – your sentence will be more than the advisory sentence.

Tr. p. 259-60. This statement suggests that the trial court concluded that a higher-than-advisory sentence was warranted by the presence of an aggravating factor, and the court was well within its discretion in reaching this conclusion. *See Guzman v. State*, 985 N.E.2d 1125, 1133 (Ind. Ct. App. 2013) (a single aggravating factor is sufficient to warrant an enhanced sentence). Nothing about this statement suggests that the trial court thought it had no discretion in the matter. We find no error here.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.