**Barry NOBLE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–9902–CR–105.**

Court of Appeals of Indiana.

Sept. 14, 2000.

1120

 

Paul T. Fulkerson, Skiles & Cook, Indianapolis, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

SHARPNACK, Chief Judge

Barry Noble appeals his convictions for battery, a class A misdemeanor,[1] battery causing serious bodily injury, a class C felony,[2] and battery with a deadly weapon, a class C felony.[3] He raises two issues, which we restate as:

1) whether the trial court erred in denying Noble's motion to dismiss the charges against him following a mistrial; and

2) whether Noble's convictions for battery causing serious bodily injury and battery with a deadly weapon violate double jeopardy principles.

We affirm in part and reverse in part.

The facts most favorable to the convictions follow. On the evening of January 7, 1996, Noble arrived at the apartment of his girlfriend, Wendy Wagner. Wagner was upset at Noble because he had struck her earlier that day, and she asked him to leave. A physical altercation ensued. At some point after the fight ended, Noble called someone to come pick him up. Because it was cold that night, Wagner permitted Noble to wait in the apartment until his ride arrived. While Noble waited, Wagner went to bed. She awoke some time later as Noble, who said that he was sorry and that he did not mean to do it, was carrying her to her bathroom. Wagner looked at her back in the mirror and saw "blood everywhere." Record, p. 505. She had sustained a deep three to four inch cut on her back near her right shoulder. When the police arrived, they found two razor blades in the apartment.

Noble was charged with, among other offenses, battery, a class A misdemeanor, battery resulting in serious bodily injury, a Class C felony, and battery with a deadly weapon, a class C felony. The first trial on those charges ended in a mistrial. Noble subsequently filed a motion to dismiss the charges against him on double jeopardy grounds, but the trial court denied the motion.

After the second trial, the jury convicted Noble on the three battery charges. The trial court sentenced Noble to five years of incarceration, with two years suspended, to be followed by two years of probation. The trial court ordered that Noble's sentences for the two felony battery convictions would be served concurrently.

## I.

 The first issue is whether the trial court erred in denying Noble's motion to dismiss the charges against him following a mistrial. Noble contends that his retrial violated the federal double jeopardy clause because the State had goaded him into requesting a mistrial.[4]

---

1. Ind.Code § 35–42–2–1(a)(1).

2. Ind.Code § 35–42–2–1(a)(3).

3. Ind.Code § 35–42–2–1(a)(3).

4. Noble also cites Article I, § 14 of the Indiana Constitution in support of his argument that his retrial was illegal. However, he provides no authority or independent analysis supporting a separate standard under the Indiana Constitution. Accordingly, the state constitutional claim is waived. *See Butler v. State*, 724 N.E.2d 600, 605 n. 1 (Ind.2000). Consequently, we address Noble's claim solely under the Fifth Amendment.

The federal double jeopardy clause provides, in relevant part: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. If a defendant moves for a mistrial, he or she forfeits the right to raise a double jeopardy claim in subsequent proceedings unless the motion for mistrial was necessitated by governmental conduct "intended to 'goad' the defendant into moving for a mistrial." *Wilson v. State*, 697 N.E.2d 466, 472 (Ind. 1998) (quoting *Oregon v. Kennedy*, 456 U.S. 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982)), *reh'g denied*. The key inquiry on appeal concerns the subjective intent of the prosecuting attorney. *Id.* Because an analysis of subjective intent is a factual interpretation, we will reverse the trial court's decision only if it is clearly erroneous. *Butler*, 724 N.E.2d at 604. Although a trial court's determination of prosecutorial intent is not conclusive for purposes of state appellate review, we do regard its determination as "very persuasive." *Id.* at 603–604 (quoting *Wilson*, 697 N.E.2d at 473).

In this case, a few days before Noble's first trial the State became aware of a laboratory report that concluded that there was human blood on one of the razor blades that was found in Wagner's apartment. The State decided not to use the report at trial because the discovery deadlines had passed, and the State further decided not to disclose the report to Noble because it was not exculpatory evidence. At trial, Noble cross-examined a police officer, Deputy Keith Johnson, at length about his recollection that there was blood on one of the razor blades, questioning how he could be sure about the presence of blood when the blade had not, as far as Deputy Johnson knew, been subjected to testing and questioning why Deputy Johnson had not noted the presence of blood on the blade in his report. Subsequently, the State asked another police officer, Deputy

Michael Hornbrook, the following questions:

> [State]: Detective hornbrook [sic], you mentioned earlier that one of the razor blades that you recovered appeared to have human blood on it. Were you able to confirm whether or not that was in fact human blood?
>
> [Witness]: Yes, I was.
>
> [State]: And was it?
>
> [Witness]: Yes.

Supp. Record, p. 317.[5]

Immediately after that colloquy, Noble questioned Deputy Hornbrook as follows:

> [Noble]: Detective how is it that you determined that there was human blood on one of those blades?
>
> [Witness]: I submitted a request card to the Indianapolis Marion County Forensic Lab. And asked for an analysis to determine whether it was human blood. And they came back with a report and said that it was, in fact, human blood.

Supp. Record, pp. 317–318. Next, Noble moved for, and received, a mistrial because Deputy Hornbrook had referred to the report, which had not been admitted into evidence or disclosed to the defense.

After the trial court declared a mistrial, Noble filed a motion to dismiss the charges on grounds that his motion for mistrial was made necessary by prosecutorial misconduct. At a hearing on the motion, the prosecutor assigned to the case testified that he did not intend to use the report at trial and that because the report was not exculpatory he did not think he was ethically obligated to reveal it. He acknowledged that, when he questioned Deputy Hornbrook about whether he had confirmed that there was blood on the blades, he was eliciting evidence that had not been disclosed to the defense. However, the prosecutor stated that he had expected that Noble would object to the question on grounds that Deputy Hornbrook was not an expert, thereby ending that line of

---

5. The record in this case includes a supplemental record of proceedings, which we refer to as "Supp. Record."

questioning. We conclude from this evidence that, although the State had decided not to use the report at trial, it was attempting to introduce the report's conclusions through other means. The State's strategy may have been misguided, but it does not provide evidence that the State intended to force Noble to move for a mistrial. *See Butler*, 724 N.E.2d at 604 (determining that a prosecutor's attempt to introduce new evidence mid-trial was intended to obtain a conviction, not to goad the defendant into seeking a mistrial).

Furthermore, at the hearing on the motion to dismiss the prosecutor denied any intent to provoke a mistrial through Deputy Hornbrook's testimony:

> And, I would ... would also say, by way of testimony, that at the point at which the mistrial occurred, I had just succeeded in admitting a very, very strong piece of evidence. As the Court will recall, I had just succeeded in admitting the large blow-up [photograph] of the wound that was inflicted on Miss Wagner's shoulder and I was watching the jury's face when I showed them that photograph. At that point, Judge, I was convinced beyond any doubt on my part that I was winning that trial. I had absolutely no reason to ... to try to get a mistrial. And, at ... at that point, the last thing in my mind to have ... to have wanted to was to cause a mistrial, which is exactly why I phrased the questions the way it [sic] was phrased.

Supp. Record, p. 423. This statement is supported by our reading of the record. *See Butler*, 724 N.E.2d at 603–604 (citing the State's account of the events leading up to a mistrial to support a conclusion that the State did not intend to goad the defendant into seeking a mistrial). In addition, the trial court determined in its ruling on Noble's motion to dismiss that "the Defendant has failed to prove by a preponderance of the evidence that the State intended to cause the mistrial...." Record, p. 130. Our analysis of the record confirms that determination. *See Wilson*,

697 N.E.2d at 473 (providing that the trial court's determination of the State's intent is "very persuasive" evidence).

■ Nevertheless, Noble asserts that the State had a strong reason to goad him into seeking a mistrial. During the first trial, before Deputy Johnson or Deputy Hornbrook testified, the trial court excluded the testimony of Dr. Bart Ferraro, an expert witness for the State. Noble concludes that the loss of the testimony was such a fatal blow to the State's case that it chose to seek a mistrial in hopes of getting Dr. Ferraro's testimony admitted at a second trial. However, the record does not conclusively demonstrate that the State believed that its case was fatally impaired. After the trial court excluded Dr. Ferraro's testimony, the State moved to continue the trial and requested an interlocutory appeal of the trial court's ruling. When the trial court asked the State if the State's case was fatally prejudiced, the State responded, "[i]t's entirely possible, Judge." Supp. Record, p. 256. This statement is at best equivocal. In light of our review of the evidence and the prosecutor's later description of his intent, we cannot say that this equivocal statement renders the trial court's determination of the State's intent clearly erroneous.

Therefore, because retrial is barred only when a prosecutor intends to cause a mistrial, and because the record supports the trial court's conclusion that the prosecutor did not intend to force Noble to move for a mistrial, we hold that Noble's retrial did not violate the federal double jeopardy clause. *See Wilson*, 697 N.E.2d at 473.

## II.

The second issue is whether Noble's convictions for battery causing serious bodily injury and battery with a deadly weapon violate double jeopardy principles. Noble asserts that both convictions arose out of his stabbing of Wagner, and that therefore he has been punished twice for the same criminal conduct in violation of the Indiana double jeopardy clause.[6]

6. Noble does not assert that his convictions     for battery causing serious bodily injury and

The Indiana double jeopardy clause provides, in relevant part, "[n]o person shall be put in jeopardy twice for the same offense." IND. CONST. art. 1, § 14. As our supreme court has noted, "Indiana's Double Jeopardy Clause was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). Consequently, two or more offenses are the "same offense" and violate the state double jeopardy clause if, "with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.*

We first turn to the statutory elements test. The Indiana Supreme Court has described the test as follows:

> The objective of this test is to determine whether the essential elements of separate statutory crimes charged could be established hypothetically. In this test, the charged offenses are identified by comparing the essential statutory elements of one charged offense with the essential statutory elements of the other charged offense. Inspecting the relevant statutes and the charging instrument to identify those elements which must be established to convict under the statute, this review considers the essential statutory elements to determine the identity of the offense charged, but does not evaluate the manner or means by which the offenses are alleged to have been committed, unless the manner or means comprise an essential element.

*Id.* at 50.

Here, the guiding statute for both felony battery charges provides that

> (a) A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner

commits battery, a Class B misdemeanor. However, the offense is:

\* \* \* \* \*

> (3) a Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon;....

I.C. § 35-42-2-1.

Therefore, in order to convict Noble for battery resulting in serious bodily injury, the State had to prove that Noble: 1) knowingly or intentionally; 2) touched Wagner; 3) in a rude, insolent or angry manner; 4) that resulted in severe bodily injury. I.C. § 35-42-2-1. In order to convict Noble for battery with a deadly weapon, the State had to prove that Noble: 1) knowingly or intentionally; 2) touched Wagner; 3) in a rude, insolent or angry manner; 4) with a deadly weapon. I.C. § 35-42-2-1. Although the two offenses are similar, they each contain one element that the other offense does not contain. One requires proof that Noble inflicted severe bodily injury, and the other requires proof that Noble used a deadly weapon. Thus, one offense focuses upon the result of the touch, while the other focuses upon the means used to accomplish the touch. Consequently, we conclude that they are separate and distinct offenses, and that they do not violate the statutory evidence test. *See Griffin v. State*, 717 N.E.2d 73, 88–89 (Ind.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 2697, 147 L.Ed.2d 968 (2000).

Turning to the actual evidence test, our supreme court has described it as follows:

> Under this inquiry, the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. To show that two challenged of-

---

battery with a deadly weapon are multiple punishments in violation of the federal double jeopardy clause. Furthermore, he does not assert that his conviction for battery as a class

A misdemeanor is an unconstitutional additional punishment in violation of the federal constitution or the Indiana constitution.

fenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Richardson*, 717 N.E.2d at 53. To establish that two offenses are the same offense under the actual evidence test, the possibility that the same evidence was used to convict the defendant of both offenses must be reasonable, not speculative or remote. *Griffin*, 717 N.E.2d 73.

In this case, the felony battery convictions arose from the same set of facts. Noble's conviction for battery with a deadly weapon could only have resulted from his stabbing of Wagner, and his conviction for battery resulting in serious bodily injury also could only have resulted from the stabbing. Consequently, there is a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of battery resulting in serious bodily injury may also have been used to establish the essential elements of battery with a deadly weapon. *See Mitchell v. State*, 726 N.E.2d 1228, 1245 (Ind. 2000) (determining that the trial court did not err in correcting the defendant's sentences for murder and felony neglect because the same evidence was used to prove both offenses), *reh'g denied*. Therefore, we hold that Noble's convictions are for the same offense and that they violate the Indiana double jeopardy clause. *See Richardson*, 717 N.E.2d at 54.

The State asserts that the state double jeopardy clause does not apply in cases such as Noble's because he received concurrent sentences for the felony battery convictions. The State reasons that because his sentences are concurrent, Noble has not received multiple punishments, only multiple convictions, and multiple convictions do not violate the Indiana double jeopardy clause. In doing so, the State relies upon the reasoning of Justice Boehm in *Richardson*, wherein he concluded that the Indiana double jeopardy clause only prohibits subsequent prosecutions for the same offense, not multiple punishments for the same offense. *See id.* at 70–71 (Boehm, J., concurring in result). We note that our supreme court has elsewhere stated, "dual *convictions* cannot stand if a defendant 'demonstrate[s] a reasonable possibility that the evidentiary facts used by the fact-finder to establish elements of one offense may also have been used to establish the essential elements of a second challenged offense.'" *Wise v. State*, 719 N.E.2d 1192, 1201 (Ind.1999) (quoting *Richardson*, 717 N.E.2d at 53). Moreover, we have recently found a violation of the Indiana double jeopardy clause in a case where the defendant was sentenced to concurrent sentences. *See Davies v. State*, 730 N.E.2d 726, 741 (Ind.Ct.App.2000). Thus, multiple convictions (and by extension, multiple punishments), as well as multiple prosecutions, violate the Indiana double jeopardy clause. Consequently, the State's argument is without merit.

Our final task is to determine what must be done to correct the double jeopardy violation. When two convictions are found to contravene Indiana double jeopardy principles, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation. *Richardson*, 717 N.E.2d at 54. If it will not, one of the convictions must be vacated. *Id.* In the interest of efficient judicial administration, the trial court need not undertake a full sentencing reevaluation, but rather the reviewing court will make this determination itself, being mindful of the penal consequences that the trial court found appropriate. *Id.*

In the instant case, both convictions are of equal severity, as they are both for class C felonies. Reducing one of the felony battery convictions to a lesser form of battery will not eliminate the double jeopardy violation because we have determined that the two convictions arose out of the same set of facts, and a lesser battery

conviction would still arise out of the same facts as the remaining felony battery conviction. Consequently, one of the felony battery convictions must be vacated. Because the sentences for the battery convictions are of equal length, and the trial judge determined that they should run concurrently, there are no more or less severe penal consequences for vacating one instead of the other. Therefore, we determine that the second count of battery, which is count VI, battery with a deadly weapon, must be vacated. *See, e.g., Belser v. State,* 727 N.E.2d 457, 462 (Ind. Ct.App.2000) (vacating counts II through V in a five-count information for arson where they all involved the same evidentiary facts as count I).

For the foregoing reasons, we affirm the trial court's denial of Noble's motion to dismiss. We reverse the second of Noble's two convictions for battery as a class C felony and remand with instructions to vacate the conviction for battery with a deadly weapon.

Affirmed in part and reversed in part.

BAKER, J. and ROBB, J. concur.