

I N T H E

# Court of Appeals of Indiana

Roy C. Robinson,

*Appellant-Defendant*

*v.*

State of Indiana,

*Appellee-Plaintiff*



**FILED**

Feb 13 2025, 9:21 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

February 13, 2025

Court of Appeals Case No.
24A-CR-1814

Appeal from the Marion Superior Court

The Honorable Angela D. Davis, Judge
The Honorable Ross F. Anderson, Magistrate

Trial Court Cause No.
49D27-2303-F1-7865

**Opinion by Judge Bradford**

Judge Foley concurs.

Judge Bailey concurs in part and dissents in part with opinion.

**Bradford, Judge.**

## Case Summary

[1] In March of 2023, the armed Roy Robinson forced K.F. into his car in Indianapolis, forced her to touch his penis and fellate him, and penetrated her vagina and anus with a prosthetic penis. K.F. managed to escape and alert the authorities, who apprehended Robinson after he crashed his car into another vehicle, injuring its two passengers.

[2] The State charged Robinson with two counts of Level 1 felony rape, Level 1 felony attempted rape, Level 3 felony kidnapping, Level 3 felony criminal confinement, Level 5 felony kidnapping, Level 5 felony criminal confinement, Level 6 felony operating a vehicle as a habitual traffic violator, Level 6 felony resisting law enforcement while operating a vehicle, and Level 6 felony resisting law enforcement causing bodily injury. After a jury convicted Robinson as charged and he pled guilty to being a habitual offender, the trial court entered judgment of conviction on all counts except Level 5 felony kidnapping and Level 5 felony criminal confinement and sentenced Robinson to an aggregate term of forty-four years of incarceration.

[3] Robinson contends that fundamental error occurred when the trial court failed to instruct the jury that it must unanimously agree on which particular acts supported each charge of Level 1 felony rape. Robinson also contends that his

convictions for Level 6 felony resisting law enforcement while operating a vehicle and Level 6 felony resisting law enforcement causing bodily injury violate Indiana prohibitions against substantive double jeopardy. Because we disagree with both contentions, we affirm.

## Facts and Procedural History

[4] On March 13, 2023, K.F. was near the corner of 16th and Dequincy in Indianapolis when Robinson drove by and asked her if she needed a ride. Robinson's car had a "Lyft or, you know, Uber thing in the window[,]" and he drove off when K.F. told him that she did not need a ride. Tr. Vol. III p. 169. Robinson soon returned and said that he was going to take the bus because he had had too much to drink. Robinson approached, and K.F. felt something in the side of her stomach. Robinson said, "Don't say anything, or I'll put it in your belly" and forced her into his car. Tr. Vol. III p. 170.

[5] Robinson, who was smoking crack cocaine and drinking alcohol, drove off and eventually arrived at the parking lot of what appeared to be an old warehouse. K.F. had noticed knives, binoculars, and what appeared to be a gun in the car. Robinson parked his car in such a way as to prevent K.F.'s escape from the parking lot but allowed her out of the car briefly to urinate and defecate. Robinson, who had already forced K.F. to touch his penis, smacked her in the face with a strap-on prosthetic penis as she relieved herself. Robinson drove to a park, where he forced K.F. to fellate him and penetrated K.F.'s vagina with the prosthetic penis because he was unable to get an erection. Tr. Vol. III p. 174. While this was occurring, Robinson told K.F. to call him "Daddy J" and

"Master J" and said, "I want to hear you say f[***] me like your step daddy used to do." Tr. Vol. III pp. 174, 175. After Robinson repeatedly penetrated K.F.'s vagina and anus with the prosthetic penis, K.F. told him that she had a friend who liked being dominated and hurt and suggested that they go to her.

[6] At K.F.'s direction, Robinson returned to the area of K.F.'s abduction and, when he allowed her out of the car, she ran to a nearby liquor store and contacted police. After police arrived, K.F. identified Robinson's car when he happened to drive by. Police followed, stopped Robinson's car, and commanded him to exit. Instead of exiting, Robinson fled westbound on 16th Street with police in pursuit at approximately ninety-two miles per hour, finally crashing into a van at the intersection of 16th and Sherman Drive. Jose Robert Leon Utrera and Marcelo Leon Utrera were in the van; Jose suffered "pain in the back of [his] head and [his] back" that became worse over time and lasted until trial, Tr. Vol. IV p. 57,[1] while Marcello eventually "started feeling pain in [his] neck and [his] back" severe enough to cause sleep deprivation. Tr. Vol. IV p. 66.

[7] On March 19, 2023, the State charged Robinson with two counts of Level 1 felony rape, Level 1 felony attempted rape, Level 3 felony kidnapping, Level 3 felony criminal confinement, Level 5 felony kidnapping, Level 5 felony criminal confinement, Level 6 felony operating a vehicle as a habitual traffic

---

[1] Volume IV of the transcript is mistakenly identified as "VOLUME 3 OF 5" on its title page. Tr. Vol. IV p. 1.

violator, Level 6 felony resisting law enforcement while operating a vehicle, and Level 6 felony resisting law enforcement causing bodily injury to Jose and/or Marcelo. On December 29, 2023, the State filed notice of intent to seek a habitual-offender enhancement.

[8] A two-day jury trial was held, and Robinson did not object to the trial court's jury instructions or tender his own instructions regarding jury unanimity. The jury found Robinson guilty as charged, and Robinson pled guilty to being a habitual offender. At sentencing, the trial court vacated one count of kidnapping and one count of criminal confinement due to double jeopardy concerns. The trial court sentenced Robinson to thirty-eight years of incarceration for each of his rape and attempted rape convictions, twenty years for kidnapping, ten years for criminal confinement, two years for operating a vehicle as a habitual traffic violator, and two years for each count of resisting law enforcement, with all sentences to run concurrently. The trial court enhanced Robinson's sentence six years by virtue of Robinson's status as a habitual offender.

## Discussion and Decision

### I. Jury-Unanimity Instruction

[9] Robinson argues that because the State chose not to allege specific acts for counts one and three, the jurors should have been instructed that they must be unanimous on which act supports each count. "In Indiana, a verdict in a criminal case must be unanimous." *Calvert v. State*, 177 N.E.3d 107, 111 (Ind. Ct. App. 2021) (citing *Fisher v. State*, 259 Ind. 633, 646, 291 N.E.2d 76, 82

(1973)), *trans. denied*. A potential unanimity problem may exist where there is a disjunctive charging information or jury instruction, or where the State presents evidence of a greater number of separate criminal offenses than that with which the defendant is charged. *Baker v. State*, 948 N.E.2d 1169, 1175 (Ind. 2011). An information or instruction is disjunctive if it joins "separate and distinct offenses in one and the same count." *Id*. (citing *Vest v. State*, 930 N.E.2d 1221, 1225 (Ind. Ct. App. 2010), *trans. denied*). "A single count of a charging pleading may include but a single offense." *Townsend v. State*, 632 N.E.2d 727, 730 (Ind. 1994). When one count improperly alleges two or more separate offenses, "[d]uplicity" occurs. *Vest*, 930 N.E.2d at 1225. "Duplicity is unacceptable because it prevents the jury from deciding guilt or innocence on each offense separately and may make it difficult to determine whether the conviction rested on only one of the offenses or both." *Id*. (citation and quotation marks omitted).

[10] While we generally review jury instructions for an abuse of discretion, *Ellis v. State*, 194 N.E.3d 1205, 1214 (Ind. Ct. App. 2022), *trans. denied*, Robinson neither objected to the jury instructions that were given nor tendered his own unanimity instruction and has therefore waived the issue for appellate review. *Baker*, 948 N.E.2d at 1178. Robinson attempts to avoid the effects of his waiver by contending that fundamental error has occurred.

> In order to be fundamental, the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process. The error must be so prejudicial to the defendant's rights as to make a fair trial impossible. In considering whether a

claimed error denied the defendant a fair trial, we determine whether the resulting harm or potential for harm is substantial. Harm is not shown by the fact that the defendant was ultimately convicted. Rather, harm is determined by whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled.

*Id*. at 1178–79 (citations omitted).

[11] The State's two charges for Level 1 felony rape both alleged in identical language[2] that Robinson had committed rape by "other sexual conduct[,]" which "means an act involving […] a sex organ of one (1) person and the mouth or anus of another person; or […] the penetration of the sex organ or anus of a person by an object." Ind. Code § 35-31.5-2-221.5. These charges, however, are not examples of duplicity in charging. They are, rather, examples of something the State is permitted to do, which is "allege alternative means or theories of culpability when prosecuting the defendant for a single offense." *Baker*, 948 N.E.2d at 1175 (citation and quotation marks omitted). "In essence the State is permitted to 'present[] the jury with alternative ways to find the defendant guilty as to *one element*.'" *Baker*, 948 N.E.2d at 1175 (quoting *Cliver v. State*, 666 N.E.2d 59, 67 (Ind. 1996)) (emphasis in *Cliver*). For each rape count

---

[2] Counts I and III both read as follows:

> On or about March 13, 2023, ROY C ROBINSON did knowingly or intentionally cause another person to perform or submit to other sexual conduct as defined in I.C. 35-31.5-2-221.5 with [K.F.]; when such person was compelled by force, and/or compelled by the imminent threat of force and ROY C ROBINSON being armed with a deadly weapon[.]

Appellant's App. Vol. II p. 148.

in this case, the different acts that could have qualified as "other sexual conduct" were merely alternate means or theories of culpability confined to one element of the crime. Because Robinson has failed to establish that duplicity in the charges against him warranted a unanimity instruction, he has failed to establish fundamental error.[3]

## II. Double Jeopardy

[12] Robinson contends that his two convictions for Level 6 felony resisting law enforcement (one enhanced because Robinson used a vehicle to resist, and the other enhanced because he caused bodily injury during his resistance) violate Indiana prohibitions against substantive double jeopardy. "Substantive double-jeopardy claims principally arise in one of two situations: (1) when a single criminal act or transaction violates multiple statutes with common elements, or (2) when a single criminal act or transaction violates a single statute and results in multiple injuries." *Powell v. State*, 151 N.E.3d 256, 263 (Ind. 2020). The analysis laid out in *Wadle* v. State, 151 N.E.3d 227 (Ind. 2020), governs the first category of cases, while *Powell*'s analysis covers the second. *Id*.

[13] The two offenses in question are "multiple statutes with common elements," to which *Wadle* applies, even if they are defined by different subsections of the same section of the Indiana Code. *Id*. Despite the Indiana Supreme Court's use of the term "single statute" (which could be understood as referring to a

---

[3] Even defectively duplicitous charges would, we think, be insufficient to establish fundamental error. While such charges generate the *possibility* that the jury did not unanimously agree on which acts supported which charge, this, by itself, falls short of establishing that a fair trial was rendered impossible.

section of the Indiana Code), *Powell* explicitly states that it applies to "'two counts of the **same** offense.'" *Id.* (citation and footnote omitted, emphasis in *Powell*). It seems clear enough that if two offenses have different elements, they are not, in fact, the "same offense." Such is the case with the two convictions Robinson challenges.

[14] Even though the State charged Robinson with two varieties of resisting law enforcement defined in the same section of the Indiana Code, each of the two offenses, while sharing some elements, is defined in different subsections and has an element the other lacks. Indiana Code section 35-44.1-3-1(c)(1)(A) requires the State to prove that the defendant used a vehicle, while Indiana Code section 35-44.1-3-1(c)(1)(B)(ii) requires the State to prove that the defendant inflicted bodily injury on, or otherwise caused bodily injury to, another person. Consequently, they are not the same offense, and *Wadle* applies.

[15] *Wadle* requires us to "first look to the statutory language" for each charge. 151 N.E.3d at 248. The general rule announced in this first step of *Wadle* is that, if the language of either statute "clearly permits" multiple punishments, there is no double-jeopardy violation. *Id.* Here, it is true that each offense clearly permits multiple punishments for multiple victims. Both offenses are defined in Indiana Code section 35-44.1-3-1(c), and Indiana Code section 35-44.1-3-1(i) provides that "[a] person who commits an offense described in subsection (c) commits a separate offense for each person whose bodily injury, serious bodily injury, catastrophic injury, or death is caused by a violation of subsection (c)."

*See also Barrozo v. State*, 156 N.E.3d 718, 727 n.7 (Ind. Ct. App. 2020) (recognizing that the resisting-law-enforcement statute "now explicitly allows for multiple convictions" when there are multiple victims).

[16] That said, it does not seem to us that application of this general rule seems to make much sense in this case. Subsection (i) of the resisting-law-enforcement statute is limited to allowing for multiple punishments for injuries to multiple persons, and only one of Robinson's offenses is enhanced because of an injury. In other words, while the relevant statutory language clearly allows for multiple punishments under some circumstances, those circumstances do not exist in this case. Consequently, the statutory language does not clearly permit multiple punishments in this case. We therefore proceed to step two of the *Wadle* analysis.

[17] The second step is to determine whether either of the offenses is inherently or factually included in the other. *Wadle*, 151 N.E.3d at 248. An offense that is inherently included in another is one that

> (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
>
> (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or
>
> (3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

Ind. Code § 35-31.5-2-168.

[18] An offense, even if not inherently included in another, is factually included in the other if the charging information alleges "that the means used to commit the crime charged include all of the elements of the alleged lesser included offense[.]" *Norris v. State*, 943 N.E.2d 362, 368 (Ind. Ct. App. 2011), *trans. denied*. The Indiana Supreme Court has recently clarified that "when assessing whether an offense is factually included, a court may examine only the **facts as presented on the face of the charging instrument**." *A.W. v. State*, 229 N.E.3d 1060, 1067 (Ind. 2024) (emphasis in *A.W.*). "Step 2 has core constraints: it does not authorize courts to probe other facts, such as evidence adduced from trial." *Id*. "The factually included inquiry at this step is thus limited to facts on the face of the charging instrument." *Id.* "'If neither offense is an included offense of the other (either inherently or as charged), there is no violation of double jeopardy' and the analysis ends—full stop." *Id.* (quoting *Wadle*, 151 N.E.3d at 248).

[19] We conclude that neither of Robinson's felony resisting-law-enforcement offenses is included in the other, either inherently or as charged. The relevant statutory language is as follows:

> (a) A person who knowingly or intentionally:
>     (1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties;
> […]
> commits resisting law enforcement, a Class A misdemeanor, except as provided in subsection (c).
> […]

(c) The offense under subsection (a) or (b) is a:
(1) Level 6 felony if:
(A) the person uses a vehicle to commit the offense; or
(B) while committing the offense, the person:

[…]

(ii) inflicts bodily injury on or otherwise causes bodily injury to another person[.]

Ind. Code § 35-44.1-3-1. Each of the two offenses at issue contains at least one element the other does not: one requires proof that a defendant used a vehicle to commit the offense, and the other requires proof that, while committing the offense, the defendant inflicted or otherwise caused bodily injury to another person.

[20] Moreover, the two provisions do not differ only in that one involves a "less serious harm or risk of harm to the same person, property, or public interest[] or a lesser kind of culpability" than the other; the two offenses differ from one another in that they involve harms, or the risk of harms, that are distinct. *See* Ind. Code § 35-31.5-2-168(3). A person getting injured is not quite the same harm or risk of harm as that generated by committing the crime using a vehicle. Not only does the use of a vehicle carry with it the risk of death or very serious injury that might not otherwise be present in a particular act of resisting law enforcement, the use of a vehicle also greatly enhances the risk of property damage or public inconvenience resulting from a police pursuit, which, even if no damage results, could disrupt traffic and hinder the provision of emergency services. We conclude that neither the offense of resisting law enforcement using a vehicle nor of resisting law enforcement resulting in bodily injury is inherently included in the other.

[21]     We further conclude that neither of Robinson's offenses, as charged, is factually included in the other.  The charging information for Robinson provides, in part, as follows:

> COUNT IX
>
> On or about March 13, 2023, ROY C ROBINSON did knowingly or intentionally forcibly resist JOSEPH DRANSFIELD, a law enforcement officer, while said officer was lawfully engaged in his duties as a law enforcement officer and in committing said act ROY C ROBINSON operated a vehicle;
>
> COUNT X
>
> On or about March 13, 2023, ROY C ROBINSON did knowingly or intentionally forcibly resist [] JOSEPH DRANSFIELD, a law enforcement officer, while said officer was lawfully engaged in his duties as a law enforcement officer and in committing said act ROY C ROBINSON inflicted bodily injury on or otherwise caused bodily injury to Jose Utrera and/or Marcelo Utrera by pain[.]

Appellant's App. Vol. II p. 149.  The evidence tending to prove Jose's and/or Marcelo's bodily injury does nothing to establish that Robinson committed the resisting with a vehicle, and vice versa.  This ends our analysis, with Robinson having failed to establish a substantive double-jeopardy violation.[4]

---

[4] Because neither of Robinson's offenses is inherently or factually included in the other, we do not proceed to step three of the *Wadle* analysis, *i.e.*, we engage in no analysis of the evidence actually presented at trial.

> If a court has found that one offense is included in the other—either inherently or as charged—the court must then (and only then) "examine the **facts underlying those offenses**, as presented in the charging instrument and as adduced at trial." *Wadle*, 151 N.E.3d at 249 (emphasis added) (citing *Bigler v. State*, 602 N.E.2d 509, 521 (Ind. Ct. App. 1992), *trans. denied*).  Step 3 functions as a cabined version of *Richardson*'s actual evidence test, and it serves an important, practical role in our double jeopardy analysis:  to facilitate the distinction between what would otherwise

We affirm the judgment of the trial court.

Foley, J., concurs.

Bailey, J. concurs in part and dissents in part with opinion.

ATTORNEY FOR APPELLANT

Christopher Taylor-Price
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Michelle Hawk Kazmierczak
Deputy Attorney General
Indianapolis, Indiana

---

be two of the "same" offenses. *See id.* at 249 n.27. So, at this final step, a court may only then probe the underlying facts—as presented in the charging instrument and adduced at trial—to determine whether a defendant's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Id.* at 249.

*A.W.*, 229 N.E.3d at 1071 (emphasis in *A.W.*).

**Bailey, J., concurring in part, dissenting in part.**

[23] I concur in part one of the majority opinion regarding the Jury-Unanimity Instruction. However, I dissent to part two of the majority opinion because I believe the double jeopardy claims should be analyzed under the *Powell v. State* framework, rather than the *Wadle v. State* framework. Moreover, when analyzed under *Powell*, I would hold that the two resisting law enforcement convictions violate double jeopardy principles.

[24] Robinson was charged under a single statute (Indiana Code Section 35-44.1-3-1) for a single criminal act (resisting law enforcement); therefore, "[t]he framework of *Wadle* [*v. State*, 151 N.E.3d 227 (Ind. 2020)] does not facially apply, as we are not looking at a violation of multiple statutes with common elements." *Moyers v. State*, __ N.E.3d __, 2024 WL 5250182 at *6 (Bailey, J., dissenting in part). This case also does not fit neatly into the framework of *Powell v. State*, 151 N.E.3d 256 (Ind. 2020), because we are concerned not with multiple injuries[5] but with one charge of bodily injury and one charge relating to the means of commission, i.e., the use of a vehicle. Nevertheless, I believe this case should be governed by *Powell* because the question is "whether the same act may be twice punished as two counts of the same offense." *Powell*, 151 N.E.3d at 263; *see also Jones v. State*, 159 N.E.3d 55, 65 (Ind. Ct. App. 2020) (applying the *Powell* framework to two counts of kidnapping, one elevated

---

[5] Although the evidence suggested that Robinson injured two people, he was charged with only one count of resisting law enforcement while inflicting bodily injury.

because of bodily injury and one elevated due to an intent to obtain ransom), *trans. denied*; *Barrozo v. State*, 156 N.E.3d 718, 725 (Ind. Ct. App. 2020) (applying the *Powell* framework where there is a "charging of a single offense in multiple counts").

The first step in the *Powell* analysis is to "review the text of the statute to identify the appropriate 'unit of prosecution.'" *Jones*, 159 N.E.3d at 63 (quoting *Powell*, 151 N.E.3d at 265). "[A] unit of prosecution is 'the minimum amount of activity a defendant must undertake, what he must do, to commit each new and independent violation of a criminal statute[.]'" *Barrozo*, 156 N.E.3d at 725 (quoting *United States v. Rentz*, 777 F.3d 1105, 1109 (10th Cir. 2015)). The resisting law enforcement statute is a "conduct-based crime" in that the minimum amount of activity required to violate the statute is the act of resisting law enforcement, rather than the result of the resistance or the means of committing the resistance. *Jones*, 159 N.E.3d at 64 (discussing the conduct-based statute of kidnapping). That is, the gravamen of the offense is resisting law enforcement (see I.C. § 35-44.1-3-1(a)); a particular result (bodily injury) or means of resisting (use of a vehicle) can *elevate* the offense (see I.C. § 35-44.1-3-1(c)), but it would not form the basis of a second, discrete offense.

The resisting law enforcement statute was amended in 2019 to add a subsection explicitly allowing multiple counts (or units of prosecution) for each victim of bodily injury inflicted while the defendant resisted law enforcement. *See* I.C. § 35-44.1-3-1(i). However, as the majority notes, Robinson was not charged with multiple counts of resisting while causing bodily injury; he was charged with

one such count (Count 9), and another count of resisting law enforcement by use of a vehicle, without reference to bodily injury (Count 10). Therefore, whether or not the resisting law enforcement statute, as applied to Robinson, contains multiple "units of prosecution" is, at best, ambiguous. Under such ambiguous circumstances, we must proceed to the second step of the *Powell* analysis. *See Jones*, 159 N.E.3d at 63 (citing *Powell*, 151 N.E.3d at 264).

[27] Under the second step of *Powell*, "we examine the facts to determine whether the defendant's actions are 'so compressed in terms of time, place, singleness of purpose and continuity of action as to constitute a single transaction.'" *Id*. (quoting *Powell*, 151 N.E.3d at 264). If criminal acts are sufficiently distinct, multiple convictions may stand; however, if the acts are continuous and indistinguishable, only a single conviction may stand. *Powell*, 151 N.E.3d at 264-65. "Any doubt counsels against turning a single transaction into multiple offenses." *Id*. at 265 (internal quotation and citation omitted).

[28] Here, there was one continuous act of resisting law enforcement. When police initially followed Robinson's vehicle, they pulled him over a few blocks from the store where K.F. was located. There is no indication that Robinson resisted law enforcement prior to being initially pulled over. After he pulled over and was commanded to exit the vehicle, Robinson resisted law enforcement by fleeing in his vehicle. While in flight during this same episode of resisting law enforcement, Robinson crashed into a van and caused injury. But he did so during one and only one act of resisting law enforcement by fleeing in his vehicle. That is, his one continuous act of resisting law enforcement was so

compressed in terms of time, place, singleness of purpose and continuity of action as to constitute a single transaction. Robinson's multiple convictions for this single episode of resisting law enforcement violates substantive double jeopardy principles.

[29] When two convictions contravene double jeopardy principles, we will

> remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation. If it will not, one of the convictions must be vacated. In the interest of efficient judicial administration, the trial court need not undertake a full sentencing reevaluation, but rather the reviewing court will make this determination itself, being mindful of the penal consequences that the trial court found appropriate.

*Noble v. State*, 734 N.E.2d 1119, 1125 (Ind. Ct. App. 2000) (citations omitted), trans. denied. Here, the two convictions found to be double jeopardy were both Level 6 felonies and therefore of equal severity. In addition, the sentences imposed for each conviction were identical and ordered to run concurrently. Therefore, "there are no more or less severe penal consequences for vacating one instead of the other." *Id*. at 1126. Under such circumstances, we will simply choose one count to be vacated. *Id*. I would remand with instructions for the trial court to vacate Count X.

[30] In short, although I concur with the majority's opinion regarding jury instructions, for the reasons stated above I must respectfully dissent from the majority opinion regarding double jeopardy.